**COUNTRY CLUBS, INC., Appellant,**

**v.**

**John A. WARD and Jack Smalley, Partners, d/b/a John Ward Associates Advertising, Appellees.**

**No. 17514.**

Court of Civil Appeals of Texas, Dallas.

Nov. 20, 1970.

Rehearing Denied Dec. 18, 1970.

M. Clifton Maxwell, Dallas, for appellant.

John Gillis, Dallas, for appellees.

CLAUDE WILLIAMS, Justice.

The question presented by this appeal is whether a Kentucky court had jurisdiction to render an in personam judgment by default against a nonresident Texas corporation. We hold that the court of the sister state did not possess jurisdiction and accordingly we reverse and render the judgment of the Texas court which was based upon such judgment.

John A. Ward and Jack Smalley, Partners, doing business as John Ward Associates Advertising, residents of the State of Kentucky, instituted an action in Jefferson Circuit Court, Common Pleas Branch, of the State of Kentucky, against Urban Properties, Inc., a Kentucky corporation, seeking to recover judgment for goods sold and delivered as well as for services rendered in the sum of $1,835. Thereafter plaintiffs amended their complaint to include as defendant "County Clubs, Inc., 3800 Golfing Green Drive, Dallas, Texas." Thereafter plaintiffs filed what is designated as "Second Amended and Supplemental Complaint" which contained only the following two paragraphs:

"I.

Through mistake, the word 'County' was used in their amended and supplemental complaint rather than the correct word 'Country'. The proper name of the defendant is Country Clubs, Inc.

"II.

Each and every allegation of their prior complaints are hereby reiterated and reaffirmed the same as if copied herein in full, except each and every instance where the name Country Clubs, Inc. was used is hereby amended to the name Country Clubs, Inc."

A copy of the summons on the amended and supplemental complaint, dated November 25, 1966, and directed to be served upon the Secretary of State of the State of Kentucky contains no certificate that same was actually executed by delivering same to the Secretary of State.

A copy of the summons of the second amended and supplemental complaint, dated December 12, 1966 and directed to be served upon the Secretary of State of the Commonwealth of Kentucky, contains a return showing that it was executed on the 19th day of December 1966 by serving Country Clubs, Inc., a nonresident of the Commonwealth of Kentucky, by delivering a true copy of the summons together with attested copy of complaint to the Secretary of State of the Commonwealth of Kentucky, as process agent for said defendant.

On December 19, 1966 the Secretary of State of the Commonwealth of Kentucky addressed a letter to Country Clubs, Inc., 3800 Golfing Green Drive, Dallas, Texas, stating that suit had been filed against such corporation in the Jefferson Circuit Court at Louisville, Kentucky. The letter further stated that: "As provided under Section 271.610, Kentucky Revised Statutes, I am enclosing herewith a copy of the summons and complaint." This letter was received by Country Clubs, Inc., in Dallas, Texas, and the officer of that corporation who received same testified that the only pleading accompanying the notice and summons was a copy of the second amended and supplemental complaint, copied above.

Thereafter, in the Kentucky action, plaintiffs filed a motion for default judgment against defendant, Country Clubs, Inc., by addressing same to: "Mr. James

E. Maser, Attorney for Defendant Urban Properties, Inc., P.O. Box 14355, Dallas, Texas, 75234." In said motion it was recited that defendant Country Clubs, Inc. had been served with a summons December 19, 1966 but that defendants had failed to appear and respond to the action.

Thereafter on March 14, 1967 judgment was rendered by default in the Jefferson Circuit Court in favor of plaintiffs and against defendant Country Clubs, Inc. in the sum of $1,835 with interest and costs. The judgment recites that the defendant had been duly summoned but failed to appear and also that the defendant is a corporation doing business in Kentucky.

The present suit was instituted by the judgment creditors in the Kentucky case in the district court of Dallas County, Texas against Country Clubs, Inc. seeking a judgment based upon the Kentucky decree. Country Clubs, Inc. challenged the validity of the Kentucky judgment contending (1) that proper service had not been had upon it and (2) that there had been no minimal contact in the State of Kentucky by the Texas corporation which would subject Country Clubs, Inc. to the jurisdiction of the Kentucky court. Following trial before the court without a jury the trial court found that the Kentucky judgment was valid and rendered judgment as prayed.

Appellant, in two points of error, urges that the Texas judgment should be voided because (1) the service of process by the Kentucky Secretary of State was inadequate to confer jurisdiction on the Kentucky court, and (2) there was no activity by appellant in Kentucky sufficient to warrant jurisdiction by the Kentucky court either under the Kentucky statute or the Federal Constitution.

The "Long Arm Statute" of the State of Kentucky is Art. 271.610, Kentucky Revised Statutes Annotated and Sections (2), (3) and (4) thereof provide as follows:

"(2) Any foreign corporation that does business in this state without having complied with the provisions of KRS 271.385 as to designation of process agent shall, by such doing of business be deemed to have made the Secretary of State its agent for the service of process in any civil action instituted in the courts of this state against such corporation involving a cause of action arising out of or connected with the doing of business by such corporation in this state. The plaintiff in such action shall set forth in his petition the postoffice address of the home office of the corporation.

"(3) A plaintiff desiring to obtain service as a corporation under this section shall cause two copies of his petition, together with two copies of the summons, to be served upon the Secretary of State. The Secretary of State shall immediately forward one copy of the petition, and one copy of the summons, by registered mail to the corporation at its home office as shown in its notice of intent to withdraw or in the plaintiff's petition, as the case may be. The process server shall make the usual return to the court, and in addition the Secretary of State shall make a return to the court, showing that the acts contemplated by this subsection have been performed, and shall attach to his return the registry receipt, if any. Jurisdiction over the corporation shall not attach until the return by the Secretary of State is filed.

"(4) The Secretary of State shall keep a file of the petitions and summons served upon him, and shall make a record of the action taken by him respecting the service in each case. His return to the court shall be conclusive as between the parties, but shall not protect him in an action for damages, by any party aggrieved, in case of his dereliction of duty in this regard."

■ It is undisputed in this record that appellant Country Clubs, Inc. was incorporated under the laws of the State of Texas; that it was not incorporated or quali-

fied in the State of Kentucky; that it had no office or place of business in Kentucky and that it had no designated agent for service in this sister state. Accordingly, appellant occupied the status of a nonresident of Kentucky and in order for a court of that state to render an in personam judgment against a nonresident corporation it is imperative and essential that the record affirmatively show a strict compliance with the provisions of the Kentucky "Long Arm Statute" providing a mode of service on the nonresident defendant. McKanna v. Edgar, 388 S.W.2d 927 (Tex.Sup.1965); Texaco, Inc. v. McEwen, 356 S.W.2d 809 (Tex.Civ. App., Dallas 1962, writ ref'd n.r.e.); Castle v. Berg, 415 S.W.2d 523 (Tex.Civ.App., Dallas 1967).

■ While it is true that Article IV, Section 1, of the Constitution of the United States provides that full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state, it is equally well established that despite the provisions of this full faith and credit clause, the Texas courts may examine the facts to determine whether or not the court of the sister state did in fact have jurisdiction to enter the decree of which full faith and credit is sought. Williams v. State of North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945); Burleson v. Burleson, 419 S. W.2d 412 (Tex.Civ.App., Houston 14th Dist.1967); 34 Tex.Jur.2d, § 368, p. 385.

■ When a plaintiff sues upon a judgment of a sister state in Texas and introduces a properly authenticated copy of the judgment as provided by 28 U.S.C.A. § 1738, he thereby establishes a prima facie case. The burden of attacking the judgment and establishing reasons why it should not be given full faith and credit, such as lack of jurisdiction of the person of the defendant, then shifts to the defendant. Williams v. State of North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577; Hamilton v. Newbury, 412 S.W.2d 801

(Tex.Civ.App., Dallas 1967, writ ref'd n.r. e.).

■ Our Supreme Court in McKanna v. Edgar, 388 S.W.2d 927 (Tex.Sup.1965), in passing upon a similar question concerning sufficiency of notice under the Texas "Long Arm Statute" not only reiterated the rule that the provided mode of service contained in the statute must be strictly complied with but also that the ordinary presumptions in support of the judgment (including presumptions of due service of citation when the judgment so recites) are not available in attacks against default judgments. The court held that in a case such as this no inferences of essential jurisdiction of facts are to be inferred but must affirmatively appear on the face of the record. See also Aetna Casualty and Surety Co. v. Dobbs, 416 S.W.2d 869 (Tex.Civ.App., Eastland 1967); Bankers Life and Casualty Co. v. Watson, 436 S. W.2d 404 (Tex.Civ.App., Tyler 1969). Thus jurisdiction of a court to render a default judgment may not be sustained by the judgment recitals but must appear affirmatively on the face of the record. Flynt v. City of Kingsville, 125 Tex. 510, 82 S.W.2d 934 (Tex.Com.App.1935, opinion adopted); Harris v. Hayles, 433 S.W. 2d 250 (Tex.Civ.App., Texarkana 1968).

■ The record in this case, when examined carefully in the light of the authorities recited above, clearly reveals that the express provisions of the Kentucky "Long Arm Statute" were not strictly complied with when an effort was made to obtain service of process on the nonresident defendant. First, the record reveals that appellees failed to allege the essential facts contained in the Kentucky statute which would bring the Texas corporation within the terms thereof. There are no allegations that the Texas corporation was a foreign corporation doing business in the State of Kentucky without having complied with the provisions of the Kentucky law so as to designate the Secretary of State as its agent for service of process in any civil

action instituted in the courts of Kentucky involving a cause of action arising out of or connected with the doing of business by such corporation in Kentucky. The Kentucky statute is plain and explicit that a plaintiff desiring to obtain such service under that statute shall cause two copies of his petition, together with two copies of the summons, to be served upon the Secretary of State, who shall immediately forward one copy of the petition and one copy of the summons, by registered mail, to the corporation at its home office as recited in plaintiff's petition. This necessarily contemplates that the petition or complaint must set forth and describe a "cause of action" against the defendant. The record here reveals that the only summons served upon appellant corporation in Texas was a copy of plaintiffs' second amended and supplemental complaint and an examination of this document reveals, as quoted above, that no essential jurisdictional allegations are contained therein; that it does nothing more than announce the change of one word from "County" to "Country"; and definitely does not contain information which could in anywise be construed as being a "cause of action" against appellant corporation. The record here demonstrates clearly that there has been no strict compliance with the Kentucky "Long Arm Statute" and that, regardless of the recitation contained in the Kentucky judgment, the court of our sister state acquired no jurisdiction over the Texas corporation. Not being a valid judgment in Kentucky the Texas court was completely without authority to breathe life into it and render judgment based thereon.

■ We turn now to a consideration of appellant's contention of lack of due process based upon the contention of absence of minimal contacts in the State of Kentucky which would confer upon that state extraterritorial jurisdiction against the Texas corporation. The validity of the Kentucky judgment is controlled by the law of Kentucky but it must satisfy the due process clause. O'Brien v. Lanpar Company, 399 S.W.2d 340 (Tex.Sup.1966).

In Hamilton v. Newbury, 412 S.W.2d 801 (Tex.Civ.App., Dallas 1967, writ ref'd n.r.e.), we reviewed the authorities on the question of due process in the exercise of jurisdiction over a nonresident in an in personam judgment, beginning with the landmark case of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, decided by the Supreme Court of the United States in 1877, wherein the court held broadly that a personal judgment rendered in a state court against a nonresident, without personal service of process upon him within the state, or his appearance in the action, was invalid. Due to changing times and conditions, the courts in a series of decisions have diluted the Pennoyer doctrine to a large extent. In 1945 the Supreme Court of the United States in International Shoe Co. v. State of Washington, etc., 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945), said that due process requires only that in order to subject a defendant to a judgment in personam he must have had certain minimum contacts with the foreign state such that the maintenance of the suit against him does not offend "traditional notions of fair play and substantial justice." See also McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). However, in 1958 the court, in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, seemed to reduce the speed of the trend away from the Pennoyer doctrine by announcing that it was a mistake to assume that such trend heralds the eventual demise of all restrictions on personal jurisdiction of state courts. The court again emphasized the minimal contacts with the foreign state which are a prerequisite to its exercise of power over such defendant.

Our Supreme Court in O'Brien v. Lanpar Company, 399 S.W.2d 340 (Tex.Sup. 1966), quoting from the Supreme Court of Washington in Tyee Construction Co. v. Dulien Steel Products Co., Inc., 62 Wash. 2d 106, 381 P.2d 245 (1963), stated three

basic factors which should coincide if jurisdiction over a nonresident corporation is to be entertained: (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. The court pointed out that the contact with the foreign state must be substantial rather than casual or fortuitous.

■ The factors which may be considered in determining whether or not there has been minimal contact with the forum include the nature and character of the business transacted in the foreign state; the number and type of activities within the forum; and whether such activities give rise to the cause of action. Hearne v. Dow-Badische Chemical Co., 224 F.Supp. 90 (So.Dist. of Tex.1963); Sun-X International Co. v. Witt, 413 S.W.2d 761 (Tex. Civ.App., Texarkana 1967, writ ref'd n. r. e.); Hamilton v. Newbury, 412 S.W.2d 801 (Tex.Civ.App., Dallas 1967, writ ref'd n.r. e.); and Uvalde Rock Asphalt Co. v. Consolidated Carpet Corp., 457 S.W.2d 649 (Tex.Civ.App., Beaumont 1970).

■ The facts as revealed by this record demonstrate that some Kentucky citizens had purchased some real property and desired to initiate an apartment project. Appellant corporation was invited by these Kentucky people to come to Kentucky and participate in this project. The senior vice president of Country Clubs, Inc. went to Kentucky and investigated the feasibility of the project. He became interested and made several trips to Kentucky laying the groundwork for the development. In 1965 Urban Properties, Inc. was incorporated in the State of Kentucky and the senior vice president of Country Clubs, Inc. became president of Urban Properties, Inc. Seventy per cent of the stock of Urban Properties, Inc. was owned by Country Clubs, Inc. After the formation of Urban Properties, Inc. in Kentucky appellant corporation carried out no activity in the State of Kentucky concerning the apartment project. Appellant had no Kentucky office, employees, telephone listing, agent for process, directors, bank account, shareholders' meetings or board of directors' meetings in the State of Kentucky. Urban Properties, Inc. had separate books, bank accounts, corporate records, and officers and directors. Appellant had no assets in Kentucky and did not buy or sell any property or render any services in Kentucky after the formation of Urban Properties, Inc. The apartment project initiated by Urban Properties, Inc. and known as Mallgate never got under way. It had no financing and all activity in connection with that project ceased in the summer of 1966. Appellees' estimate of their services on the Mallgate work was addressed to Urban Properties, Inc. and all estimates and progress reports were forwarded to that corporation. Invoices from appellees covering their work performed for Urban Properties, Inc. were mailed to Urban Properties, Inc. and not to appellant. No demand was ever made by appellees to appellant for payment for services rendered and for which suit was eventually brought in Kentucky. The contract for the work and services to be performed and which was made the basis of the litigation in Kentucky, was made between appellees and Urban Properties, Inc. on February 10, 1966. Appellant was not a party to that agreement. There is no evidence that appellant corporation assumed liability for the payment of any indebtedness of the Kentucky corporation.

A careful evaluation of the testimony admitted before the trial court leads us to the definite conclusion that appellant was successful in proving an absence of that "minimal contact" of appellant within the State of Kentucky which is made essential by the above authorities. Unlike the contacts which ripened into contracts within the foreign state as illustrated in O'Brien v. Lanpar Company, 399 S.W.2d 340 (Tex.Sup.1966) and Nyman v. Schnitzer, 405 S.W.2d 120 (Tex.Civ.App., Eastland 1966), the contract in this case which was the basis for services rendered by appellees was not made or participated in by appellant corporation. We do not think that appellant's activities within the State of Kentucky before the consummation of the contract are sufficient to give rise to the cause of action eventually sued upon.

Nor can it be said that the fact that appellant corporation owned 70 per cent of the capital stock of Urban Properties, Inc. is sufficient to justify assumption of jurisdiction of the Texas corporation. The Supreme Court of the United States has held that mere ownership of stock of subsidiary companies does not constitute doing business in a state. Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925). To the same effect in Kentucky see Harlan Public Service Co. v. Eastern Construction Co., 254 Ky. 135, 71 S.W.2d 24 (1934).

Since we have concluded that appellant has established conclusively the lack of essential minimal contact within the State of Kentucky it necessarily follows that full faith and credit cannot be extended to the Kentucky judgment and it cannot form the basis for a valid judgment against appellant in Texas.

Appellant's points 1 and 2 are sustained and the judgment of the trial court is reversed and here rendered that appellees take nothing against appellant.

Reversed and rendered.