**James COLSON, Appellant,**

v.

**THUNDERBIRD BUILDING MATERIALS, A Division of L & W Supply Corp., A Delaware Corporation, Appellee.**

**No. 9058.**

Court of Civil Appeals of Texas, Amarillo.

Oct. 31, 1979.

Rehearing Denied Nov. 28, 1979.

Brock, Waters & Pigg, Harold H. Pigg, Lubbock, for appellant.

Crenshaw, Dupree & Milam, Don C. Dennis, Lubbock, for appellee.

COUNTISS, Justice.

This suit on an Arizona default judgment requires this court to determine whether there was compliance with the statutory method of service utilized in the Arizona suit. We hold that the Arizona court did not acquire in personam jurisdiction of appellant James Colson because appellee Thunderbird Building Materials did not satisfy the requirements of the Arizona service statute it utilized. Consequently, we reverse the judgment of the trial court and render judgment for Colson.

James Colson, a resident of Lubbock, Texas, engaged in work as a subcontractor in the state of Arizona in 1974. A dispute arose related to his construction activity and appellee Thunderbird sued Colson "and Jane Doe Colson, his wife" and others in the Superior Court of Maricopa County, Arizona. Thunderbird utilized Rule 4(e)(2)(a) of the Arizona Rules of Civil Procedure to obtain service by mail on the Colsons in Texas.

Copies of the Arizona summons and complaint were sent by registered mail, return receipt requested, to James Colson and to "Jane Doe Colson" at the Lubbock address where Mr. and Mrs. Colson resided. Mrs. Colson accepted both letters from the postman and signed the return receipts "Mrs. James Colson." She showed the letters to Mr. Colson either that day or the following day. He consulted an attorney about the matter but took no further action on the case until suit was filed in Texas. The Arizona court subsequently entered a default judgment against the Colsons. This suit against them, seeking to enforce the Arizona judgment, was then filed in Texas.

Following a jury trial, the trial court entered judgment against Mr. Colson for the amount due under the Arizona judgment, plus interest and costs.[1] In this court, Colson presents several points of error. Our disposition of the case requires us to consider only Colson's contention that the Arizona court never acquired jurisdiction of his person because of faulty service.

The acquisition of in personam jurisdiction of a non-resident defendant was, for many years, grounded on the doctrine of *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1878) which held, *inter alia,* that a money judgment against a non-resident was void unless there was either personal service of process within the forum state or voluntary appearance of the defendant in the suit. The realities of a mobile, urban population eventually led to the modification of that rule[2] by the "minimum contacts" standard stated in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945):

[D]ue process requires only that in order to subject a defendant to a judgment

---

1. The court also decreed that Thunderbird take nothing against Mrs. Colson. That portion of the judgment was not appealed.

2. The need and the response are described in *Hanson v. Denckla,* 357 U.S. 235, 250–251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958):

   As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same

time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565, to the flexible standard of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057.

in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

There is now no doubt that "[i]n personam jurisdiction may constitutionally be acquired by extraterritorial service of process on natural persons as in the case of corporations." *Mitchim v. Mitchim,* 518 S.W.2d 362, 365 (Tex.1975).

The doctrines announced in *International Shoe Co. v. Washington, supra, McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) and *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228 (1958) are the foundation for the long arm statutes exemplified by Rule 4(e)(2) of the Arizona Rules of Civil Procedure and Article 2031b of the Texas Revised Civil Statutes Annotated. *See McKanna v. Edgar,* 388 S.W.2d 927 (Tex.1965).

■ Since Article IV, Section I of the United States Constitution requires each state to give full faith and credit to the judicial proceedings of every other state, an individual sued on a final judgment of a sister state cannot litigate, in the suit to enforce the foreign judgment, the merits of the controversy that led to the judgment. The merits have been determined in the foreign proceeding and are constitutionally entitled to full faith and credit. However, the full faith and credit clause does not prohibit a test of the jurisdiction of the foreign forum because a judgment rendered without jurisdiction is void, not entitled to recognition in any forum and subject to collateral attack. *See Country Clubs, Inc. v. Ward,* 461 S.W.2d 651 (Tex.Civ.App.— Dallas 1970, writ ref'd n. r. e.); *Jackson v. Randall,* 544 S.W.2d 439 (Tex.Civ.App.— Texarkana 1976, no writ). The jurisdictional defense is usually centered on the contention that there was no personal jurisdiction over the defendant in the foreign forum because (1) the defendant did not have suf-

ficient minimal contacts with the foreign forum to trigger that forum's long arm statute (*i. e.,* lack of due process) or (2) the steps required by the long arm statute were not followed. *Mitchim v. Mitchim, supra,* at p. 365.

■ In evaluating the jurisdictional defense, there are certain principles that must be applied. The long arm statute must not exceed the "minimal contacts" standard,[3] must provide a procedure that is "reasonably calculated to inform non-resident defendants of the pending proceedings" and must not deny them an opportunity to be heard in defense of their interest. *Hanson v. Denckla, supra,* at pp. 245, 257, 78 S.Ct. 1228.

■ Texas courts will, upon proper motion as in this case, follow the substantive interpretations of the foreign statute by its courts. However, certain principals and presumptions of Texas law are applicable at the outset. Thus, when a judgment of a sister state regular on its face and authenticated in accordance with 28 U.S.C. § 1738 is introduced in evidence, a prima facie case is established and Texas law presumes that the foreign forum had jurisdiction over the cause and the parties "unless disproved by extrinsic evidence or by the record itself." *A & S Distributing Co. v. Providence Pile, Etc.,* 563 S.W.2d 281, 283 (Tex.Civ.App.— Dallas 1977, writ ref'd n. r. e.). There is language in several Texas cases that this presumption does not exist if the foreign judgment is a default judgment such as we have in this case. *See, e. g., Jackson v. Randall,* 544 S.W.2d 439 (Tex.Civ.App.— Texarkana 1976, no writ); *Country Clubs, Inc. v. Ward, supra.* We believe, however, that the proper view was signaled by *Mitchim v. Mitchim, supra,* and clearly enunciated in *A & S Distributing Co. v. Providence Pile, Etc., supra,* where the court stated that the rule of no presumption "cannot be properly applied to a foreign default judgment in view of the full faith and credit

---

3. "But it is a mistake to assume that this trend [minimal contacts] heralds the eventual demise of all restrictions on the personal jurisdiction of

state courts." *Hanson v. Denckla,* 357 U.S. 235, 251, 78 S.Ct. 1228, 1238 (1958).

clause and 28 U.S.C. § 1738, since in a suit brought in this state, an attack on the foreign judgment is a collateral attack, and the presumption of regularity applies."[4]

■■■ Also, when a procedure for giving notice and obtaining jurisdiction is statutorily established, that method is generally exclusive and the form prescribed must be followed with reasonable strictness. *See Scucchi v. Woodruff,* 503 S.W.2d 356, 360 (Tex.Civ.App.—Fort Worth 1973, no writ); *Clayton v. Newton,* 524 S.W.2d 368, 372 (Tex.Civ.App.—Fort Worth 1975, no writ). This is particularly true when dealing with long arm statutes because they exist on the outer fringes of permissible constitutional acquisition of personal jurisdiction. Thus, when there is a specific statute that sets out the steps that must be taken, the inquiry is not whether the defendant had actual knowledge of the proceeding against him; rather, the question is whether that knowledge was conveyed to him in the manner required by the statute. *See Clayton v. Newton, supra; Scucchi v. Woodruff, supra.*

The portion of the Arizona long arm statute, Rule 4(e)(2), utilized in this case, reads as follows:

(a) Registered mail. When the whereabouts of a defendant outside the state is known, the serving party may deposit a copy of the summons and complaint in the post office, registering it with a return receipt requested. Upon return through the post office of the registry receipt, he shall file an affidavit with the court showing the circumstances warranting the utilization of the procedure authorized under Section 4(e)(1); and (a) that a copy of the summons and complaint was dispatched to the party being served; (b) that it was in fact received by the party as evidenced by the attached registry receipt; (c) that the genuine receipt thereof is attached; and (d) the date of the return thereof to the sender.

This affidavit shall be prima facie evidence of personal service of the summons and complaint and service shall be deemed complete and time shall begin to run for the purposes of Section 4(e)(4) of this Rule thirty (30) days after the filing of the affidavit and receipt.

16 A.R.S. Rules of Civil Procedure, Rule 4(e)(2). The purpose of Rule 4(e)(2) was stated by the Arizona Supreme Court in *Houghton v. Piper Aircraft Corporation,* 112 Ariz.App. 365, 542 P.2d 24, 26 (1975): "Arizona's long arm statute is contained in Rule 4(e)(2) of the Arizona Rules of Civil Procedure and is intended to give Arizona residents the maximum privileges permitted by the Constitution of the United States." Colson had sufficient minimum contact with Arizona to trigger its long arm statute, and he does not contend otherwise.

Colson does contend, however, that the steps required by Rule 4(e)(2)(a) were not followed; thus, the Arizona court never obtained jurisdiction over him and its judgment is void. Specifically, Colson points to that portion of the statute that states: "(b) that it was in fact received by the party as evidenced by the attached registry receipt." He contends that the "attached registry receipt" presented to the Arizona court showed that the notice addressed to him was delivered to "Mrs. James Colson". Consequently, there was nothing before the Arizona court to show that the notice was "in fact received" by James Colson.

The Arizona judgment and the affidavit called for in Rule 4(e)(2)(a) were introduced into evidence in the trial court. The judgment appears regular on its face and was initially entitled to the presumptions discussed above. The affidavit, signed by Thunderbird's Arizona counsel, purports to recite the various facts called for by the rule. Its recitation relative to receipt of the notice is as follows:

however, involved a direct attack on a domestic default judgment. When suit is brought on a final judgment from a foreign forum, any attack on the jurisdiction of the foreign court is necessarily collateral and traditionally more difficult.

---

**4.** Therein lies the problem. Several cases that have been decided since *McKanna v. Edgar,* 388 S.W.2d 927 (Tex.1965) have cited the case as authority for the proposition that foreign default judgments are not entitled to the jurisdictional presumptions. The *McKanna* case,

3. The Summons and Complaint were received as is evidenced by the attached genuine return registry receipts signed by Mrs. James Colson on December 18, 1974.

The two receipts signed by "Mrs. James Colson" were attached to the affidavit.

 We have not found any Arizona cases addressing the question before the court. We may, therefore, look to the law of this and other forums for assistance in reaching our decision. *Withers v. Stimmel,* 363 S.W.2d 144, 148 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.). It is not necessary, however, for us to go beyond the principles already stated.

 The affidavit required by Arizona statute is obviously designed to provide the Arizona court with a factual basis for determining whether there has been compliance with the statute. When the statute requires that the affidavit show the summons and complaint were "in fact received"[5] by the party as evidenced by the attached registry receipt, we think it means exactly what it says. At least one of the registry receipts attached to the affidavit must provide evidence of receipt of the summons and complaint by James Colson. Neither does so. They are only evidence of receipt by "Mrs. James Colson" and the affidavit recites that fact. Thus, when the Arizona judgment was entered, there was nothing before the court in Arizona to establish service on James Colson. When a Texas statute requires personal service on a party, service on the spouse will not suffice. *See Rotello v. Brazos County Water Control, Etc.,* 574 S.W.2d 208, 210 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). There is no reason to apply a different interpretation to the Arizona statute absent Arizona authority to the contrary.

The Arizona statute was not followed with reasonable strictness and, therefore, the presumptions that initially attached to the judgment are rebutted by the record. The judgment is void because the Arizona court failed to obtain personal jurisdiction of James Colson.

Thunderbird relies on a series of cases from other jurisdictions that have provisions for service by registered mail. *See, e. g., Action Industries, Inc. v. Wiedeman,* 236 Pa.Super. 447, 346 A.2d 798 (1975) and *Howard Ave. Realty Corp. v. McIntosh,* 352 So.2d 348 (La.App. 4th Cir. 1977). The cases cited by Thunderbird hold that the particular provisions for service by registered mail do not necessarily require personal delivery to the addressee. We note, however, that none of the statutory provisions in the cases cited by Thunderbird require that there be evidence that the summons and complaint were in fact received by the party as evidenced by the registry receipt. In order to adopt Thunderbird's position, we would be required to insert language into the Arizona statute that is not there and ignore language that is there.

Thunderbird also contends that Rule 4(d) of the Arizona Rules of Civil Procedure permits personal service by leaving a copy of the summons and complaint at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion residing there or by delivery to an agent authorized by appointment or by law to receive service of process. Rule 4(d), however, is concerned with direct service by a person authorized to serve process and not with service by registered mail. The provisions of Rule 4(d) are incorporated by reference in Rule 4(e)(2)(b) of the long arm statute but not in Rule 4(e)(2)(a), the section in question.

The judgment of the trial court is reversed and judgment rendered in favor of appellant James Colson.

---

**5.** Black's Law Dictionary 712 (4th ed. 1951) defines "in fact" as follows: "Actual, real; as *distinguished from implied or inferred.* Resulting from the acts of parties, instead of from the act or intendment of law." Thus, in the con-

text of this case, "in fact received" means the party actually or really received service in the prescribed manner. The law will not imply or infer that service in some other manner is equivalent to service in the prescribed manner.