# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00520-CV

**Khrysten Williams, Appellant**

**v.**

**Asset Acceptance LLC, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY
### NO. C-1-CV-10-004680, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Khrysten Williams appeals a trial court order overruling her motion for new trial seeking to set aside a no-answer default judgment awarding liquidated damages following substituted service. Williams asserts, in substance, that the trial court abused its discretion in refusing to set aside the default judgment because (1) she never received actual notice that she had been served with process; (2) there were fatal defects in the manner in which appellee, Asset Acceptance LLC, obtained substituted service; and (3) the judgment awarded damages predicated on liability facts that were never alleged in Asset Acceptance's pleadings. Asset Acceptance has not filed a brief in response. Although we reject Williams's other complaints, we agree that the judgment erroneously awarded damages predicated on an unpled liability theory. We will vacate that portion of the award, but otherwise affirm the judgment.

## BACKGROUND

On May 18, 2010, Asset Acceptance, as successor-in-interest to American Express Bank, FSB, filed suit against Williams alleging that she had failed or refused to pay amounts owing on an American Express credit card account she owned. Asserting theories of breach of contract, account stated, and open account, Asset Acceptance sought liquidated damages in the amount of $29,610.25, which included an alleged principal amount of $18,366.76 and $11,243.46[1] in interest, plus pre- and post-judgment interest as allowed by the card agreement or Texas law, and costs of suit.[2]

After several failed attempts to personally serve Williams, Asset Acceptance filed a motion for substituted service. *See* Tex. R. Civ. P. 106(b). In support of the motion, Asset Acceptance attached the June 29, 2010 affidavit of William T. Hoagland, a private process server. Hoagland averred that he had made seven attempts to serve Williams at her home address between June 3, 2010, and June 28, 2010, noting the specific dates, times, and results of each attempt. He added that he had verified on his initial attempt that Williams resided at the address and that he had spoken with Williams's husband and left a delivery notice with him. On each subsequent attempt, Hoagland averred, he received no response at the front door and left a delivery notice affixed there. On his seventh and final visit, Hoagland indicated, he found the delivery notice from his previous attempt still affixed to the door.

---

[1] We note an apparent discrepancy of three cents in Asset Acceptance's calculation—adding the alleged principal amount of $18,366.76 to the alleged interest amount of $11,243.46 yields a total of $29,610.22 rather than the $29,610.25 it alleges.

[2] Along with its original petition, Asset Acceptance attached requests for disclosure, requests for admissions, and requests for production.

On July 30, 2010, the trial court granted Asset Acceptance's motion for substituted service, finding that service had been attempted at Williams's address and that substituted service would be "reasonably effective to give [Williams] notice of this suit." *See id.* R. 106(b)(2). The court authorized service by "delivering a true copy of the citation and petition attached to anyone over 16 years of age at [Williams's address] OR attaching a true copy of the citation and petition securely to the front door/entry way . . . ." *See id.* R. 106(b). The court further ordered that the process server's return "be endorsed on or attached to the citation, stating when and how the citation was served, and be signed by the [process server]," and that the process server "make due return in accordance with the Texas Rules of Civil Procedure Rule 107." *See id.* R. 107.

On August 17, 2010, Asset Acceptance filed the returned citation, a copy of the order for substituted service, and an affidavit from the process server who executed same, Marcellus Griffin, prepared on the preceding day. The affidavit reflected that Griffin had affixed the citation and original petition to the main entry way at Williams's address, as had been authorized by the trial court's order.

On April 12, 2011, Asset Acceptance filed a motion for default judgment requesting an award of $48,977.84, which included not only amounts owed on the American Express account, as referenced in Asset Acceptance's petition, but also amounts owed on an additional credit card account with "First USA/Chase Bank." With the motion, Asset Acceptance submitted an affidavit from an Asset Acceptance employee purporting to establish the amounts Williams owed on both credit card accounts and a business-records affidavit attaching and proving up twenty-eight pages of records documenting Asset Acceptance's purchase of the delinquent accounts, American Express credit card statements in Williams's name, a cardmember's agreement, and what appear to be

3

printouts from Asset Acceptance's computer systems. On May 3, 2011, the trial court signed a final default judgment awarding Asset Acceptance $33,704.28 "as the total amount due on the American Express account"; $15,273.56 "as the total amount due on the First USA/Chase Bank account"; court costs, and post-judgment interest at the statutory rate.

On May 13, 2011, Williams filed a motion for new trial seeking to set aside the default judgment. She complained, as she does here, of various asserted defects in service. However, during the hearing on her motion, Williams acknowledged that she lived at the address to which Asset Acceptance's personal and substituted service attempts had been directed, that her husband had received a delivery notice, and that she had ignored the notice and an instruction therein that she call a phone number. The trial court subsequently signed an order denying Williams's motion. This appeal ensued.

**ANALYSIS**

On appeal, Williams urges, in substance, that the trial court abused its discretion in three ways when declining to set aside the default judgment against her. First, she argues that she never received a copy of the citation and original petition. Second, she argues that the documents used to obtain substituted service contained fatal errors. Finally, she claims that the default judgment imposes liability on her based on a theory not supported by Asset Acceptance's pleadings.[3]

As a general rule, trial courts have broad discretion in ruling on motions for new trial. *Limestone Constr., Inc. v. Summit Commercial Indus. Props., Inc.*, 143 S.W.3d 538, 542

---

[3] Williams has represented herself both on appeal and below. We have attempted to fairly construe the legal substance of Williams's complaints without raising arguments for her. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-86 (Tex. 1978).

(Tex. App.—Austin 2004, no pet.). We review a trial court's denial of a motion for new trial for abuse of discretion. *Id*. (citing *Cliff v. Huggins*, 724 S.W.2d 778, 778-79 (Tex. 1987)). The test for abuse of discretion is whether the trial court acted arbitrarily or without reference to guiding legal principles. *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004). A failure by a trial court to analyze or apply the law correctly is an abuse of discretion. *McDaniel v. Yarbrough*, 898 S.W.2d 251, 253 (Tex. 1995).

Because of its greater reliability, "Texas law prefers personal service over substitute service." *Vespa v. National Health Ins. Co.*, 98 S.W.3d 749, 751 (Tex. App.—Fort Worth 2003, no pet.); *accord Mylonas v. Texas Commerce Bank-Westwood*, 678 S.W.2d 519, 522 (Tex. App.—Houston [14th Dist.] 1984, no writ) ("substituted service is not the preferred method"). Texas allows substituted service, but only after personal service fails. *See State Farm Fire & Cas. Co. v. Costley*, 868 S.W.2d 298, 298-99 (Tex. 1993) (per curiam). When substituted service occurs, it must strictly comply with the order authorizing it because the order "is the sole basis of authority authorizing substituted service." *Vespa*, 98 S.W.3d at 752; *Taylor v. State*, 293 S.W.3d 913, 916 (Tex. App.—Austin 2009, no pet.). Rule 106(b) governs substituted service:

> Upon motion supported by affidavit stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted under either (a)(1) [personal service] or (a)(2) [registered or certified mail] at the location named in such affidavit but has not been successful, the court may authorize service
>
> (1) by leaving a true copy of the citation, with a copy of the petition attached, with anyone over sixteen years of age at the location specified in such affidavit, or
>
> (2) in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit.

5

Tex. R. Civ. P. 106(b). When citation is made by an alternative method of service under rule 106(b), proof of service must be made in the manner ordered by the court. *Id*. R. 107. Whether service strictly complied with the rules is a question of law that we review de novo. *Furst v. Smith*, 176 S.W.3d 864, 868-70 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

In her first issue, Williams argues the trial court abused its discretion in denying her motion for new trial and setting aside the default judgment against her because she never received actual notice of the lawsuit. If a defendant did not receive suit papers, generally a default judgment must be set aside. *Fidelity & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 574 (Tex. 2006) (per curiam) (citing *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988) ("Failure to give notice violates the most rudimentary demands of due process of law.")). Substituted service, however, is predicated on having a procedure that, though it may not give actual notice, is expected to be "reasonably effective to give the defendant notice of the suit." *See* Tex. R. Civ. P. 106(b)(2). "Due process requires only that the method of notice utilized be reasonably calculated, under the circumstances, to apprise an interested party of the pendency of the action and afford the party the opportunity to present objections." *Walker v. Brodhead*, 828 S.W.2d 278, 280 (Tex. App.—Austin 1992, writ denied) (citing *Peralta*, 485 U.S. at 84-85). The Supreme Court of Texas has held that actual notice is not only unnecessary, but is in fact, contrary to rule 106(b)'s underlying rationale:

> Substituted service exists to allow plaintiffs to effect service where proof of actual notice under Rule 106(a) is impractical. Under Rule 106(b), a court may authorize substituted service only after a plaintiff has unsuccessfully tried to effect personal service or service by certified mail, return receipt requested, as required by Rule 106(a). A plaintiff may resort to substituted service only upon the failure of these methods which provide proof of actual notice. Thus, to require proof of actual notice upon substituted service would frustrate Rule 106(b)'s purpose of providing

6

alternate methods for plaintiffs . . . . In fact, the rule itself contemplates other procedures which will not necessarily furnish evidence of actual notice. The rule allows service by leaving a copy of the citation and petition with someone over the age of sixteen at the defendant's place of abode as stated in the affidavit. Tex. R. Civ. P. 106(b)(1). This method of substituted service provides no evidence in the record of when defendant received actual notice, but rather only provides proof of when plaintiff actually left the copies with someone in compliance with the rule.

*Costley*, 868 S.W.2d at 298-99 (citations omitted).

An affidavit attached to the return of service reflects that substituted service was accomplished on Williams under rule 106 by affixing a copy of the citation and petition to the residence at the address specified in the order for substituted service. Although Williams claims that she did not receive actual notice of the citation and petition, and the affidavit does not purport to establish that she did, it is nonetheless sufficient proof that substituted service on Williams was completed in accordance with the trial court's order. As further support, Williams verified at the hearing on her motion that she resided at the address specified in the order for substituted service. Under the circumstances, we conclude the method of notice was reasonably calculated to apprise Williams of the pendency of the action and afford her the opportunity to present objections. *See Brodhead*, 828 S.W.2d at 280 (substituted service by leaving copy of citation with person over sixteen years of age at defendants' homestead ranch satisfied due process despite defendants' lack of actual notice.). Thus, the trial court did not abuse its discretion in declining to set aside the default judgment on this basis.

Williams also contends that Asset Acceptance's motion for substituted service and affidavit in support of the motion did not comply with rule 106. The supreme court has "long demanded strict compliance with applicable [service] requirements when a defendant attacks a

default judgment." *Hubicki v. Festina*, 226 S.W.3d 405, 407 (Tex. 2007) (per curiam). Even proof that the defendant had actual notice will not cure defective service. *Id*.

Williams emphasizes documents she purportedly obtained from the Travis County Clerk's website. While searching the website, Williams claims she discovered documents supposedly filed with the trial court on August 17, 2010 entitled "Citation RET:CV CITATION RET UNSERVED," which, in addition to the citation, order for substituted service, and affidavit of substituted service in her own case, included a citation, an affidavit entitled "Declaration of Not Found," and a petition, all in the unrelated matter of *Asset Acceptance LLC v. Steven K. Buck*, cause number C-1-CV-10-004677. She also notes that the name and signature of the process server in the *Buck* documents differs from the name and signature of the process server used in her case. She attached these documents as Exhibit A to her motion.[4] While we are unclear as to how or why documents relating to another cause number were included among Williams's documents on the County Clerk's website, this clerical error has no bearing on the outcome of the case. Williams did not dispute the fact that the necessary documents were actually on file with the court clerk. The clerk's official records demonstrate conclusively that they were. The presence of additional, unrelated documents on the County Clerk's website, while curious, does not alter that conclusion. The trial court did not abuse its discretion in refusing to set aside the default judgment on this basis.

Next, Williams challenges statements in the affidavit that Asset Acceptance submitted in connection with its motion for substituted service. Under rule 106, a motion seeking substituted service must include an affidavit stating "the location of the defendant's place of business or usual

---

[4] All of the documents within Exhibit A are watermarked "unofficial."

8

place of abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted . . . at the location named in such affidavit but has not been successful." Tex. R. Civ. P. 106(b). Substituted service may not properly issue on a motion supported by an affidavit that is conclusory or otherwise insufficient. *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990). The disputed affidavit contains the process server's name and signature, a description of the items he attempted to deliver to Williams—the citation, original petition, and discovery requests—and an account of his various attempts including the dates, times, and results of each of his seven visits.

Williams challenges several portions of the affidavit. She states, "[a] piece of paper with a phone number on it was left with [her husband at her address] on 06/03/2010, but no description of the matter, or in who's [sic] name the piece of paper was given, and no copy of the petition or citation was left with" her husband. Under the heading for June 3, 2010, the affidavit states, "THE SUBJECT DOES RESIDE AT THIS ADDRESS BUT IS NOT HOME AT THIS TIME. LEFT DELIVERY NOTICE WITH [Williams's husband.]" The affidavit does not assert that a copy of the petition or citation was left with Williams's husband,[5] nor does it describe with particularity what was included in the delivery notice. Williams complains the notice did not describe the matter sufficiently, but such particularity is not required under rule 106; indeed, rule 106 does not require the serving party to leave notice at all, rather, the affidavit must only state "specifically the facts showing that service has been attempted" at the location described in the

---

[5] Indeed, such attempt to serve Williams through her husband would have been improper prior to entry of the order for substituted service. "When a Texas statute requires personal service on a party, service on the spouse will not suffice." *Colson v. Thunderbird Bldg. Materials*, 589 S.W.2d 836, 841 (Tex. Civ. App.—Amarillo 1979, writ ref'd n.r.e.).

9

affidavit in the traditional manners of service. Tex. R. Civ. P. 106(b). Asset Acceptance's affidavit satisfies these requirements.

Similarly, Williams states, "[o]ne other 'post-it-note' type sticker was left at [her address], but again, no description of the matter was given and no copy of the petition or citation was left." This affidavit was made prior to the court's entry of an order allowing substituted service. It would have been improper for the process server to leave a copy of the petition or citation affixed to Williams's door at this time. We have already explained the level of detail in the notice is irrelevant. Further, any confusion Williams had concerning the notice could have been cured by calling the number on it, which she admits she never bothered to do. Williams's complaints do not refute any statement contained within the affidavit or demonstrate any error.

Williams also notes one of the delivery entries states, "THIS IS AN APARTMENT COMPLEX AND COULD NOT PROVIDE A LICENSE PLATE." Williams asserts the property at her address is a "free standing, single family dwelling." This apparent contradiction, she contends, constitutes error sufficient to set aside the default judgment. In contrast to the disputed entry, the affidavit's first entry states, "THE SUBJECT DOES RESIDE AT THIS ADDRESS BUT IS NOT HOME AT THIS TIME. LEFT DELIVERY NOTICE WITH [Williams's husband.] ONE VEHICLE IN DRIVEWAY," and then provides license plate information for the vehicle. Despite this potential inconsistency, we conclude the affidavit is sufficient in light of Williams's own statements corroborating the fact that she lived at the listed address, coupled with her acknowledgment that service was attempted, and notice left, at the proper address on at least two separate occasions. After considering Williams's challenges, we conclude the affidavit was sufficient to support the order for substituted service.

10

In her third issue, Williams argues the trial court improperly awarded damages based on a theory of liability Asset Acceptance did not allege in its petition. Asset Acceptance pled in its original petition that it sought "liquidated damages in the amount of $29,610.25, plus pre- and postjudgment interest as allowed by the contract and/or Texas law" for debt incurred in connection with an American Express credit card account. In its motion for default judgment, Asset Acceptance requested money damages for the amount owed on the American Express account in the amount of $33,704.28, as well as money owed on a First USA/Chase account in the amount of $15,273.56. This was the first reference to the First USA/Chase account or the amounts allegedly owed thereunder in these proceedings. In its final default judgment, the trial court awarded the amounts requested under both the American Express account and the First USA/Chase accounts.

A party's pleadings must describe in sufficient detail the party's cause of action so as to fairly notify the opposing party. *C & H Transp. Co., Inc. v. Wright*, 396 S.W.2d 443, 446 (Tex. Civ. App.—Tyler 1965, writ ref'd n.r.e.). To this end, a default judgment must be in accord with the pleadings in the record. *Mullen v. Roberts*, 423 S.W.2d 576, 579 (Tex. 1968). A default judgment not supported by the pleadings is fundamentally erroneous. *Caruso v. Krieger*, 698 S.W.2d 760, 762 (Tex. App.—Austin 1985, no writ). Absent fair notice, a party who fails to appear at trial will not be held to have tried an unpled cause of action by implied consent. *Stoner v. Thompson*, 578 S.W.2d 679, 685 (Tex. 1979).

Asset Acceptance did not plead entitlement to money damages based on the First USA/Chase account. It first asserted Williams's liability for that account as part of its motion for default judgment. Accordingly, it was error for the trial court to hold Williams liable and impose damages based on an account not included in Asset Acceptance's pleadings. *See HSBC Bank, N.A.*

11

*v. Khyber Holdings, L.L.C.*, No. 05-10-00220-CV, 2011 WL 874154, at *2 (Tex. App.—Dallas Mar. 15, 2011, no pet.) (mem. op.) (reversing default judgment invalidating both deed of trust and substitute trustee's deed when petition did "not contain any allegations regarding the substitute trustee's deed"); *Caruso*, 698 S.W.2d at 762 (reversing default judgment awarding damages when pleadings requested only specific performance); *Stoner*, 578 S.W.2d at 683-84 (no fair notice that court might award money damages when pleadings did not mention plaintiff "sustained money damages and contained no prayer therefore"). Accordingly, we vacate that portion of the final default judgment awarding Asset Acceptance amounts due on the First USA/Chase Bank account.

## CONCLUSION

We overrule Williams's complaints concerning notice and compliance with rule 106 but sustain the complaint regarding the First USA/Chase account damages. We vacate the final judgment award as to the unpled First USA/Chase Account, but otherwise affirm the final judgment.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed in part; Vacated in part

Filed: July 20, 2012

12