NUMBER 13-10-00129-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

                                  CORPUS
CHRISTI - EDINBURG

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



MARY
FEILD JARVIS,                                                                            Appellant,

 

v.

 

FRANK
EWING FEILD AND JOHN

SHAW
FEILD,                                                                                Appellees.

 

 



On appeal from the
County Court at Law No. 1

of Cameron County,
Texas.

 

 



  O P I N I O N

 

Before Chief Justice
Valdez and Justices Rodriguez and Benavides

Opinion by Chief
Justice Valdez

 

This
dispute pertains to the accounting and distribution of the estate of Caroline
P. Feild, deceased.  Appellant, Mary Feild Jarvis, appeals from an “Order
Approving Account for Final Settlement” signed by the trial court on February
23, 2010.  By four issues, Jarvis, advancing pro se, argues that:  (1) the
trial court did not have jurisdiction over this case; (2) the trial court
erroneously approved an incomplete inventory of the estate’s assets; (3) the
trial court erroneously approved of inaccurate market value assessments of real
property contained in the estate; and (4) the trial court’s final division of
the estate’s real property conflicts with Caroline’s intent, as expressed in
her “Last Will and Testament.”  We affirm.   

I.  Background

            In
2003, Jarvis filed a petition in Cameron County, Texas, to be designated
Caroline’s guardian.  The trial court appointed Jarvis as Caroline’s guardian
from 2007 until Caroline’s death in the state of Washington on May 2, 2008.  A
final accounting to close the guardianship case was filed by Jarvis in the
Cameron County Court of Law No. 1.

            On
May 23, 2008, co-appellee, Frank Feild,[1]
filed an application to probate Caroline’s will and letters of independent
executor in the Cameron County court.  The application noted that Jarvis
resides at 1892 Birch Avenue in Richland, Washington, and that she should be
served through her resident agent, Ramona Kantack Alcantara, her attorney from
the guardianship case, in Brownsville, Texas.  Service of citation was issued
to Jarvis on May 27, 2008, through Alcantara.  The citation indicates that
Alcantara accepted service on Jarvis’s behalf.  Subsequently, on June 5, 2008, an
attorney from Alcantara’s law firm filed an answer and objection to Frank’s
application for probate on Jarvis’s behalf.  In her sole objection, Jarvis
argued that all real property in the estate should be appraised or assigned a
fair market value “by an individual qualified to make such an analysis” prior
to the distribution.  

            On
June 24, 2008, the trial court conducted a hearing on Frank’s application and
letters of independent executor and signed an order appointing Frank as
executor of the estate, as designated by Caroline in her will.  The trial court
also concluded that “it has jurisdiction and venue over this estate.”  On
October 5, 2009, Frank filed an inventory and appraisal of all real property
contained in the estate.  In this filing, Frank outlined all of the contents of
the estate and determined that, after $75,322.77 in disbursements was deducted
from the value of the estate, the value of the property and cash in the estate
was $363,185.18.  The trial court approved the inventory and appraisals on
October 19, 2009.

            The
following day, Jarvis sent the trial court a letter alleging that several items
contained in the estate were not listed in the inventory and were missing. 
Shortly thereafter, Frank filed an “Account for Final Settlement,” which
included additional receipts and disbursements and which requested the sale and
equal distribution of proceeds amongst the beneficiaries of real property
located in Brownsville at 1144 Camwood Place in the Woodlands Park II
Subdivision, Lot 23.  Jarvis was to be awarded real property located at 1185
Parkwood Place in the Woodlands Park II Subdivision, Lot 18, in Brownsville. 
Frank was to be awarded a one-half share in property located at 1174 Camwood
Street in Brownsville and 440 E. Brushy Valley Drive in Knoxville, Tennessee,
and $11,499.28 in cash.[2] 
Meanwhile, John was to be awarded the remaining one-half share for 1174 Camwood
Street and 440 E. Brushy Valley Drive, another piece of real property located
in Presidio County, Texas, valued at $4,200, and $9,494.28 in cash.  Based on
the appraisals obtained for each of the properties, Frank asserted that each of
the beneficiaries would receive equal shares of the estate, each valued at
$89,175.

            The
trial court scheduled the matter for a hearing on January 26, 2010.  On January
12, 2010, Jarvis sent a letter protesting the “Account for Final Settlement”
and alleging that the division of the estate’s assets was inequitable.  She
argued that the real property awarded to her had purportedly already been sold
to someone else, the Tennessee property was valued at $2.2 million, and she would
not accept “encumbered properties as [her] portion of the Estate.”  She
continued, “I will accept my fair portion of the Estate’s worth in United
States dollars.  For fairness, all properties held by the Estate (real estate
and other) should be immediately sold at fair market prices and the monies
realized divided among the three heirs.”[3] 
In light of this letter and because all interested parties were out of town and
not able to attend the previously scheduled January 26, 2010 hearing, Frank
filed a motion for continuance, and the trial court re-set the hearing on the
“Account for Final Settlement” for February 23, 2010.  The trial court sent notice
that the hearing was re-set for February 23, 2010 to all interested parties.  

At
the final hearing on this matter, the trial court was advised of an objection
Jarvis made regarding the valuation of the property located in Tennessee.[4] 
Frank responded by providing documentation from the Knox County, Tennessee
appraisal district valuing the property at $108,500, of which the trial court
took judicial notice.  The trial court signed an order approving of Frank’s
“Account for Final Settlement.”  It is from this order that Jarvis now appeals.   

II.  Jurisdiction and Venue

            By
her first issue, Jarvis asserts that the trial court did not have jurisdiction
over this matter pursuant to section six of the Texas Probate Code, the venue
statute.  See Tex. Prob. Code
Ann. § 6 (Vernon 2003).[5] 
She also asserts that she was not notified of the trial court’s intention to
exercise jurisdiction over this matter and that, because Caroline resided in
Benton County, Washington, at the time of her death, the will should have been
probated in the state of Washington.  Frank and John counter by arguing that
Jarvis waived this issue by failing to specify such arguments in her notice of
appeal.[6] 
In the alternative, Frank and John argue that the trial court had jurisdiction
over this matter because Caroline had property and her will was executed in
Cameron County.  Frank and John contend that prior to her death, Caroline was
declared incapacitated and therefore did not have the competency to declare the
state of Washington her domicile.  They further contend that the trial court
had continuing jurisdiction over this matter because it had earlier determined
that Caroline was incapacitated.  With respect to Jarvis’s notice argument,
Frank and John assert that Jarvis was served through her attorney, Ramona
Kantack Alcantara, and that her attorney filed an answer and objection on her
behalf in this matter.

A.  
Subject-Matter Jurisdiction

The
crux of Jarvis’s first issue centers on venue.  However, to the extent Jarvis
argues that the Cameron County trial court lacked subject-matter jurisdiction
over this case, she has not adequately explained this contention while tying
the facts to relevant authority pertaining to jurisdictional concepts.  See
Tex. R. App. P. 38.1(i).  Jarvis
repeatedly argues that the probating of Caroline’s will should have taken place
in the state of Washington, an argument which we construe as pertaining to
venue.  Nevertheless, the Texas Supreme Court has held that we are “obliged
to ascertain that subject[-]matter jurisdiction exists regardless of whether
the parties have questioned it.”  Univ. of Tex. Sw. Med. Ctr. v.
Loutzenhiser, 140 S.W.3d 351, 358 (Tex. 2004) (emphasis in original)
(citing Waco Indep. Sch. Dist. v. Gibson, 22 S.W.3d 849, 853-54 (Tex.
2000)).  Thus, we have a duty to determine whether the Cameron County court had
subject-matter jurisdiction over this matter.  Based on our review of the
record, we believe that the Cameron County Court of Law No. 1 had subject-matter
jurisdiction over the probating of Caroline’s will because a portion of
Caroline’s estate is situated in Cameron County.  See Tex. Prob. Code Ann. § 4 (Vernon 2003)
(“The county court shall have the general jurisdiction of a probate court.  It
shall probate wills, grant letters testamentary . . . and transact all business
appertaining to estates subject to administration, including the settlement,
partition, and distribution of such estates.”); id. § 5(f) (Vernon 2003)
(“All courts exercising original probate jurisdiction shall have the power to
hear all matters incident to an estate.”); id. § 5A(a) (Vernon 2003)
(“In proceedings in the constitutional county courts and statutory county
courts at law, the phrases ‘appertaining to estates’ and ‘incident to an
estate’ in this Code include the probate of wills, the issuance of letters
testamentary and of administration . . . and generally all matters relating to
the settlement, partition, and distribution of estates of deceased persons.”); see
also English v. Cobb, 593 S.W.2d 674, 676 (Tex. 1979) (stating that an
action incident to an estate is one in which the outcome will have direct
bearing on collecting, assimilating, or distributing the decedent’s estate).

B.  
Venue

            In
making her venue argument, Jarvis cites authority addressing jurisdictional
arguments to contend that section six of the probate code mandated that the
estate be probated in the state of Washington.  See id.  Venue and
jurisdiction are two distinct concepts, and it appears that Jarvis, in her
appellate brief, conflates the two concepts.  Reliant Energy, Inc. v.
Gonzalez, 102 S.W.3d 868, 871 (Tex. App.–Houston [1st Dist.] 2003), aff’d,
159 S.W.3d 615 (Tex. 2005) (“Jurisdiction concerns the power of a court,
under the Constitution and laws, to determine the merits of an action as
between the parties and to render a judgment. . . .  Venue concerns the
propriety of prosecuting a suit involving a given subject matter and specific
parties in a particular county.”) (Emphasis in original).  Based on our
review of Jarvis’s appellate briefs, it is clear that the thrust of her first
argument is that the Cameron County court was an inappropriate venue for this
matter.  Accordingly, we will analyze her first issue with respect to venue.  

The
record does not contain a written motion arguing that the Cameron County court was
an improper venue in this matter.  Jarvis acquiesced to the probating of the
will in Cameron County until the trial court signed the final order, which, as
she alleges, resulted in her being disinherited.  She did not object to Cameron
County court as being an improper venue until she filed her appeal with this
Court. 

Texas
Rule of Civil Procedure 86(1) provides that an objection to improper venue is
waived if not made by written motion filed prior to or concurrently with any
other plea, pleading, or motion, except a special appearance motion provided
for in rule 120a.  See Tex. R.
Civ. P. 86(1); see also Graybar Elec. Co. v. Gonzalez (In re Graybar
Elec. Co.), Nos. 13-08-00073-CV, 13-08-00294-CV, 13-08-00333-CV,
13-08-00341-CV, 2008 Tex. App. LEXIS 6868, at *45 (Tex. App.–Corpus Christi
Aug. 26, 2008, no pet.) (mem. op.).  Even though it appears that appellant may
have advanced pro se for some of the proceedings below, her pro se status does
not relieve her from complying with applicable laws and rules of procedure.  See
Green v. Kaposta, 152 S.W.3d 839, 841 (Tex. App.–Dallas 2005, no pet.); see
also Siddiqui v. Siddiqui, No. 14-07-00235-CV, 2009 Tex. App. LEXIS 1443,
at *4 (Tex. App.–Houston [14th Dist.] Mar. 3, 2009, pet. denied) (mem. op.)
(“While we have compassion for the plight of the pro se litigant attempting to
follow the rules of legal procedure and substantive law, and therefore construe
pro se pleadings and briefs liberally, we must still hold appellant to the same
standard as a licensed attorney, requiring that he follow those same rules and
laws . . . .  To do otherwise would give a pro se litigant an unfair advantage
over a litigant represented by counsel.”).  Therefore, because Jarvis did not
make a written objection to the Cameron County court as an improper venue for
the probating of Caroline’s will until she filed her appeal, we conclude that her
venue argument is waived.  See Tex.
R. Civ. P. 86(1); see also Graybar Elec. Co., 2008 Tex. App.
LEXIS 6868, at *45.

C.  
Notice and Personal Jurisdiction

Jarvis
also argues that the Cameron County court lacked personal jurisdiction over her
because she did not receive notice of the various filings and hearing in this
matter.  Jarvis’s claims—that she did not receive notice of the various
hearings and pleadings filed in this case and that she was not properly
served—constitute a challenge to the court’s personal jurisdiction over her.  See
Furst v. Smith, 176 S.W.3d 864, 868 (Tex. App.–Houston [1st Dist.] 2005, no
pet.); see also Houston Precast, Inc. v. McAllen Constr. Inc., No.
13-07-135-CV, 2008 Tex. App. LEXIS 7129, at *3 (Tex. App.–Corpus Christi Sept.
25, 2008, no pet.) (mem. op.).  Whether the Cameron County court had personal
jurisdiction over Jarvis is a question of law.  See Coronado v. Norman,
111 S.W.3d 838, 841 (Tex. App.–Eastland 2003, pet. denied); see also Houston
Precast, Inc., 2008 Tex. App. LEXIS 7129, at *3.  Personal
jurisdiction is composed of two elements:  (1) the defendant must be amenable
to the jurisdiction of the court; and (2) if the defendant is amenable to the
jurisdiction of the court, the plaintiff must validly invoke that jurisdiction
by valid service of process on the defendant.  Coronado, 111 S.W.3d at 841
(citing Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 200 (Tex.
1985)).  When
a defendant has not answered, a trial court acquires jurisdiction over that
defendant solely on proof of proper service.  See Furst, 176 S.W.3d at
868; see also Houston Precast, Inc., 2008 Tex. App. LEXIS 7129, at *3.  

There
are no presumptions in favor of valid issuance, service, and return of
citation, and a failure to affirmatively demonstrate strict compliance with the
rules of civil procedure renders an attempted service of process invalid and of
no effect.  See Wilson v. Dunn, 800 S.W.2d 833, 836 (Tex. 1990); Uvalde
Country Club v. Martin Linen Supply Co., 690 S.W.2d 884, 885 (Tex. 1985)
(per curiam); see also Furst, 176 S.W.3d at 869; All Commercial
Floors, Inc. v. Barton & Rasor, 97 S.W.3d 723, 726 (Tex. App.–Fort
Worth 2003, no pet.).  An appellant may raise a defect in service for the first
time on appeal.  All Commercial Floors, Inc., 97 S.W.3d at 725 (citing Wilson,
800 S.W.2d at 836-37).   

In
support of her contentions, Jarvis asserts that the Kantack Alcantara Law
Office, P.C. only had a contract to represent her during the earlier
guardianship proceedings, not the proceedings pertaining to the probating of
Caroline’s will.  Nevertheless, the record does not include a copy of the
contract between the law firm and appellant regarding representation. 
Appellant relies solely on her bald assertions that the law firm did not
represent her in this matter, even though the record:  (1) contains filings (an
answer and objection to Frank’s probate application) made by the law firm on
Jarvis’s behalf; (2) indicates that the law firm accepted service on Jarvis’s
behalf; and (3) contains the trial court’s note that Jarvis received notice of
the various filings and hearings in this matter.  See Furst, 176 S.W.3d
at 868; see also Houston Precast, Inc., 2008 Tex. App. LEXIS 7129, at
*3.  Jarvis argues that section 128A of the probate code entitled her to
personal service of all filings and notices in this case.  See Tex. Prob. Code Ann. § 128A(a) (Vernon
2003).  Section 128A, however, does not support Jarvis’s argument because it
pertains to notice to “the state, a governmental agency of the state, or a
charitable organization” regarding a will admitted to probate.  See id. 
Her status in this case does not fall within the purview of section 128A.  See
id.  

Jarvis
also argues that sections 33(f)(1) and 407(1) of the probate code required
personal service.  See id. §§ 33(f)(1), 407(1) (Vernon 2003).  Section
33(f)(1) provides that “[w]here it is provided that personal service shall be
had with respect to a citation or notice, any such citation or notice must be
served upon the attorney of record for the person to be cited.”  Id. §
33(f)(1).  Section 407(1) pertains to the presentation of account for final
settlement and requires that “notice shall be given by the personal
representative to each heir or beneficiary of the decedent by certified mail,
return receipt requested, unless another type of notice is directed by the
court by written order.”  Id. § 407(1).  

Here,
notice was sent by certified mail to Jarvis’s attorney at the Kantack Alcantara
Law Office, P.C.  As a result of the notice, the law firm filed an original
answer and objection on Jarvis’s behalf, to which Jarvis did not object.  See
Baker v. Monsanto Co., 111 S.W.3d 158, 160 (Tex. 2003) (stating that the
filing of an answer constitutes a general appearance, which submits a defendant
to the jurisdiction of the court for all purposes); see also Boyes v.
Morries, Polich & Purdy, LLP, 169 S.W.3d 448, 455 (Tex. App.–El Paso
2005, no pet.) (same).  The record reflects that all notices were sent by
certified mail to the law firm, who appears to be registered as appellant’s
agent for service of process.  Later, Jarvis filed several letters with the
trial court at or near the time various hearings were conducted or orders
signed, which indicates that she received notice of the various filings and
hearings.  Furthermore, Jarvis admits on appeal that she received notice of the
final February 23, 2010 hearing, but she did not think that she was required to
attend.  She also complains that the estate declined to pay her expenses to
travel to Cameron County for the various hearings, which suggests that she made
a conscious choice to not attend the hearings because she did not believe that
her expenses would be paid for by the estate.  Finally, the trial court noted Jarvis’s
objections to the appraised value of the Tennessee property that she had
repeatedly raised in earlier-filed letters, which demonstrates that her
concerns were considered by the Cameron County court.  

Based
on our review, the record demonstrates that:  (1) Jarvis received notice of the
various hearings and pleadings, as evidenced by her letters sent in response to
such filings and setting; (2) the Kantack Alcantara Law Office, P.C. represented
Jarvis in the probate proceedings and was her registered agent for service of
process; and (3) Jarvis was not harmed in this matter because the trial court
considered her complaints regarding the appraised value of the Tennessee
property.  We therefore conclude that Jarvis has not satisfied her burden of
demonstrating that the Cameron County court lacked personal jurisdiction over
her because of lack of notice or defective service.[7] 
See Middleton, 699 S.W.2d at 200; Furst,
176 S.W.3d at 868; Coronado, 111 S.W.3d at 841; see also Houston
Precast, Inc., 2008 Tex. App. LEXIS 7129, at *3.  Accordingly, we overrule
appellant’s first issue. 

III. 
Inventory, Appraisement, and Final Settlement of the Estate

 

In
her second and third issues, Jarvis contends that the trial court “knowingly
approved an incomplete inventory of real property [e]state assets, including
real property, by the [e]xecutor” and “allowed inaccurate market value
assessments of real property [e]state assets by the [e]xecutor.”  Jarvis
alleges that Frank improperly included three properties in the inventory of the
estate that were previously sold to third parties and intentionally “deflated
estimates of real property values” so as to reduce her inheritance.  She
further alleges that the trial court “failed to hold the [e]xecutor financially
or criminally responsible for selling [e]state real property, without prior
Court approval,” including the property located at 1185 Parkwood Place in
Brownsville that was awarded to her.  Jarvis argues that the trial court was
complicit in allowing for the valuation of the estate based on the inventory to
be “grossly underestimated.”  Frank and John contend that Jarvis failed to
preserve these issues because her notice of appeal specifically stated that she
appealed the “Order Approving Account for Final Settlement,” rather than the
“Order Approving Inventory Appraisement[,] and List of Claims.”  

In
her pro se notice of appeal, Jarvis states the following:  “Mary (Maria) Feild
Jarvis, Real Party Interest, desires to appeal and seek relief from the “Order
Approving Account for Final Settlement” (Cause No. 2008-CPC-163-A) issued by
presiding Judge MacDonald on February 23, 2010.”  As noted earlier, Texas Rule
of Appellate Procedure 25.1(d)(2) requires appellant to “state the date of the
judgment or order appealed from.”  Tex.
R. App. P. 25.1(d)(2); see Dugan v. Compass Bank, 129 S.W.3d 579,
581 (Tex. App.–Dallas 2003, no pet.).  The record reflects that the inventory
order and the final settlement order are two separate orders signed on
different dates—October 19, 2009 and February 23, 2010, respectively.  At no
point in her notice of appeal does Jarvis specify that she was appealing from
the “Order Approving Inventory Appraisement[,] and List of Claims.”

In
response to Frank and John’s preservation arguments, Jarvis asserts that the
inventory order and the “Order Approving Account for Final Settlement” are
“linked documents” and that “the latter cannot exist without the former. 
Therefore, citation of the ‘Order Approving Account for Final Settlement’ in
the ‘Notice of Appeal’ automatically places the ‘Inventory, Appraisement[,] and
List of Claims’ [sic] under appeal.”  However, Jarvis does not cite any
authority supporting this contention.  See Tex. R. App. P. 38.1(i).  Nevertheless, Texas courts have noted
that the “disposing of appeals for harmless procedural defects is disfavored. 
That policy is reflected in Texas Rule of Appellate Procedure 38.1(f)[,] which
provides that the statement of an issue will be treated as covering every
subsidiary question that is fairly included.”  Perry v. Cohen, 272
S.W.3d 585, 587 (Tex. 2008) (citing Verburgt v. Dorner, 959 S.W.2d 615,
616 (Tex. 1997)); see Tex. R.
App. P. 38.1(f).  Further, “[a]ppellate briefs are to be construed
reasonably, yet liberally, so that the right of appellate review is not lost by
waiver.  Simply stated, appellate courts should reach the merits of an appeal
whenever reasonably possible.”  Perry, 272 S.W.3d at 587 (citing El
Paso Natural Gas v. Minco Oil & Gas, Inc., 8 S.W.3d 309, 316 (Tex.
1999); Verburgt, 959 S.W.2d at 616).  Regarding appeals of probate
orders, the Texas Supreme Court has stated that in probate proceedings,
multiple judgments may be considered final for purposes of appeal on certain
discrete issues.  See Lehmann v. Har-Con Corp., 39 S.W.3d 191, 192 (Tex.
2001) (citing Crowson v. Wakeham, 897 S.W.2d 779, 783 (Tex. 1995)[8]);
see also Brittingham-Sada de Ayala v. Mackie, 193 S.W.3d 575, 578 (Tex.
2006) (“Probate proceedings are an exception to the ‘one final judgment’ rule;
in such cases, ‘multiple judgments final for purposes of appeal can be rendered
on certain discrete issues.’”) (quoting Lehmann, 39 S.W.3d at 192). 
However, “[n]ot every interlocutory order in a probate case is appealable . . .
and determining whether an otherwise interlocutory probate order is final
enough to qualify for appeal, have proved difficult.”  Mackie, 193 S.W.3d
at 578.  Assuming, without deciding, that the “Order Approving Inventory,
Appraisement[,] and List of Claims” is an appealable order, we will analyze
Jarvis’s complaints pertaining to this order in the interest of justice and in
accordance with supreme court directives that we should construe appellate
issues liberally so that the right to appeal is not lost.  See Perry,
272 S.W.3d at 587; El Paso Natural Gas, 8 S.W.3d at 316; Verburgt,
959 S.W.2d at 616; see also Tex.
R. App. P. 38.1(f).

            In
both her second and third issues, Jarvis complains about the appraisals of the
property contained in Caroline’s estate, which allegedly resulted in a decrease
in the value of her inheritance, Frank’s purported sale of several properties
of the estate, and Frank’s alleged intentional exclusion of items from the
inventory of the estate.  However, in her appellate briefs, Jarvis does not
sufficiently argue or cite to evidence in the record showing that items
contained in Caroline’s estate were intentionally excluded from the inventory
by Frank.  See Tex. R. App. P.
38.1(i).  Moreover, she does not direct us to evidence contained in the record
demonstrating that the properties in the estate were improperly sold or
intentionally undervalued so as to reduce her inheritance.  See id.  Jarvis
includes an internet listing in her appendix attached to her appellate brief;
however, this listing has not been formally included in the record, nor does it
conclusively demonstrate the true market value of the properties.  See
Gonzalez v. Villarreal, 251 S.W.3d 763, 777 n.17 (Tex.
App.–Corpus Christi 2008, pet. dism’d w.o.j.) (holding that the attachment of
documents as exhibits or appendices to appellate briefs is not formal inclusion
in the appellate record); Nguyen v. Intertex, Inc., 93 S.W.3d 288, 293
(Tex. App.–Houston [14th Dist.] 2002, no pet.) (same); Till v. Thomas,
10 S.W.3d 730, 733-34 (Tex. App.–Houston [1st Dist.] 1999, no pet.) (same).  The
record contains appraisals for each of the properties listed in the inventory,
and the market values stated in the appraisals were used to compute the value
of Caroline’s estate and the portion of the estate each of the heirs would
receive.  In fact, the Tennessee property, which is the focus of the appraisal
dispute, was appraised by the Knox County, Tennessee appraisal district and
yielded an appraised value of $108,500.  Jarvis has not submitted for inclusion
in the record an appraisal disputing the $108,500 value calculated by the Knox
County, Tennessee appraisal district.  Based on this information, we cannot say
that the trial court erred in approving of the appraisals provided.

            Jarvis
also contends that Frank improperly sold real property contained in the estate
without the Cameron County court’s approval.  In making this contention,
however, she does not cite to any portion of the record substantiating her
claim.  See Tex. R. App. P.
38.1(i).  In signing the “Order Approving Account for Final Settlement,” the
Cameron County court approved the sale of real property located at 1144 Camwood
Place in Brownsville, with the proceeds of the sale intended “to pay any
expenses or claims against [the] estate.  Any funds left over will be
distributed between the three heirs.”  Jarvis does not point us to evidence in
the record demonstrating that the real property located at 1185 Parkwood Place,
which was awarded to her, was sold prior to the probating of Caroline’s will. 
In fact, a property search of the Cameron County Appraisal District’s database—a
copy of the property search is included in the record—shows that Jarvis has
100% ownership of real property located at 1185 Parkwood Place in Brownsville,
which undermines Jarvis’s contention that the property had been sold and she
only possessed a virtually valueless warranty deed.

            In
light of the foregoing, we cannot say that the Cameron County court erred in signing
the “Order Approving Inventory, Appraisement[,] and List of Claims.” 
Accordingly, we overrule Jarvis’s second and third issues.

IV. 
The Final Distribution of the Estate and Caroline’s Intent, 

as
Expressed in her “Last Will and Testament”

 

            In
her fourth issue, Jarvis asserts that the “Order Approving Account for Final
Settlement” does not comport with Caroline’s intent, as expressed in her “Last
Will and Testament,” which stated that each of the three heirs to the estate
would receive equal shares of the estate.  Specifically, Jarvis alleges that
she received nothing of value from the estate and that Frank and John received
property, including the Tennessee property, which purportedly has a “probable
sale market values [sic] of greater than $4 [m]illion.”  Frank and John respond
that the trial court did not err in approving the final distribution because it
resulted in each of the heirs receiving an equal share of the estate, which
reconciled with Caroline’s intent, as expressed in her will.

            In
construing a will, the court’s focus is on the testator’s intent.  San
Antonio Area Found. v. Lang, 35 S.W.3d 636, 639 (Tex. 2000).  Determining a
testator’s intent from the four corners of a will requires a careful
examination of the words used.  Id.  If the will is unambiguous, a court
should not go beyond specific terms in search of the testator’s intent.  Id. 
The testator’s intention must be ascertained by viewing the will in its
entirety.  Johnson v. McLaughlin, 840 S.W.2d 668, 672 (Tex. App.–Austin
1992, no pet.); Disabled Am. Veterans v. Mullin, 773 S.W.2d 408, 410
(Tex. App.–San Antonio 1989, no pet.).  “’If this [intent] can be ascertained
from the language of the instrument [will], then any particular paragraph of
the will which, considered alone, would indicate a contrary intent, must yield
to the intention manifested by the whole instrument.’”  Welch v. Straach,
531 S.W.2d 319, 321 (Tex. 1975) (quoting McMurray v. Stanley, 69 Tex.
227, 6 S.W. 412, 413 (1887)); Johnson, 840 S.W.2d at 672; Mullin,
773 S.W.2d at 410.  Absent ambiguity, the construction of a will is a matter of
law, which we review de novo.  Armstrong v. Hixon, 206 S.W.3d 175, 180
(Tex. App.–Corpus Christi 2006, pet. denied); Penland v. Agnich, 940
S.W.2d 324, 326 (Tex. App.–Dallas 1997, writ denied).  An ambiguity exists only
when the will uses a word that is open to more than one meaning.  Lang,
35 S.W.3d at 639; In re Estate of Hunt, 908 S.W.2d 483, 484-85 (Tex.
App.–San Antonio 1995, writ denied).  Further, “courts must not redraft wills
to vary or add provisions ‘under the guise of construction of the language of
the will’ to reach a presumed intent.”  Lang, 35 S.W.3d at 639 (quoting Shriner’s
Hosp. for Crippled Children of Tex. v. Stahl, 610 S.W.2d 147, 151 (Tex.
1980)).  We should only focus on the “meaning of the words she actually used.” 
Lang, 35 S.W.3d at 639. 

            Jarvis’s
fourth issue focuses on the following provision from Caroline’s will:

III.  DISPOSITION OF
ESTATE

            

A.   I give, devise[,] and
bequeath all of the rest, residue[,] and remainder of my estate to my
children,  FRANK E. FEILD, JOHN (JACK) FEILD, and MARY FEILD JARVIS, in
equal shares; provided, however, that if a child of mine shall not then survive
me, but should leave issue then surviving me, such then surviving issue shall
take, per stirpes, the share that such deceased child would have taken by
surviving me, or if none if then living, then said share shall be distributed,
in equal shares, to my then living children or their issue per stirpes, or if
none of my descendants is then living, then said share shall be distributed as
provided in the paragraph below.

 

(Emphasis
in original).  The clear and unambiguous language of Caroline’s will provides
that each of the children—Frank, John, and Jarvis—shall equally share the
remainder of Caroline’s estate upon her death, provided that each of the
children survived Caroline, which was the case here.  See id.  The will also
named Frank as executor of the estate.  In his role as executor, Frank
submitted an inventory and appraisal of the estate, which the trial court
approved.  In the inventory and appraisal, Frank stated that each of Caroline’s
children should receive an equal share of the estate valued at $89,175. 
Jarvis, in particular, was awarded real property located at 1185 Parkwood Place
in Brownsville, which, according to the appraisals contained in the record, is
valued at $89,175.  Despite Frank’s efforts, Jarvis sent letters to the Cameron
County court objecting to her award of the real property located at 1185
Parkwood Place.  Jarvis alleged that the property had been sold, and therefore,
she was awarded property of no value.  Despite this allegation, Jarvis does not
direct us to evidence in the record demonstrating that the property she was
awarded had indeed been sold.

            Jarvis
also objects to the market value appraisals obtained by Frank and approved of
by the trial court.[9] 
Specifically, she complained about the appraisal of the Tennessee property
obtained from the Knox County appraisal district.  She believed that if the
Tennessee property was appraised by a licensed real estate expert, the property
would be valued at approximately $2.2 million.  The “Order Approving Account
for Final Settlement” specifically states that the Cameron County court took
judicial notice of Jarvis’s letter objecting to the valuation of the Tennessee
property.  

Nevertheless,
the record does not contain any evidence conclusively demonstrating that the
market value of the Tennessee property is more than $108,500.  On appeal,
Jarvis includes a May 30, 2010 listing from LoopNet.com, a website apparently
specializing in valuing real property, demonstrating that the Tennessee
property should be valued at $0 to $100,000 per acre.  Using the larger number,
Jarvis argues on appeal that the Tennessee property is valued at $9.7 million
(97 acres multiplied by $100,000).  This LoopNet.com listing, however, is not
included in the record and cannot be used to contradict the appraisal obtained
from the Knox County appraisal district.  See Gonzalez,
251 S.W.3d at 777 n.17; Nguyen, 93 S.W.3d at 293; Till, 10 S.W.3d
at 733-34.  Furthermore, even if we were to consider the LoopNet.com
listing as formally included in the appellate record, this listing is not
specific enough to indicate the precise value of the property.  It states that
the market value of agricultural property in the relevant part of Tennessee
ranges from $0 to $100,000 per acre between the years 2005 and 2009, meaning
that the property at various points in time could have been worth between $0
and $9.7 million.  Based on the record before us, we cannot say that the trial
court erred in approving the valuation for the Tennessee property to be
$108,500.

Because
the record contains uncontradicted evidence that the market value of the
Tennessee property is $108,500 and that Jarvis received unencumbered real
property valued at $89,175, we cannot say that Jarvis has met her burden to
demonstrate that the Cameron County court erred in approving the distribution
of Caroline’s estate.  See Marlin v. Kelly, 678 S.W.2d 582, 586 (Tex.
App.–Houston [14th Dist.] 1984), aff’d, 714 S.W.2d 303 (Tex. 1986); see
also In re Estate of Cook, Nos. 2-08-003-CV, 2-08-004-CV, 2009 Tex. App.
LEXIS 9094, at *6 (Tex. App.–Fort Worth Nov. 25, 2009, no pet.) (mem. op.)
(“When . . . a will is plain in its terms and unambiguous in its meaning as to
the lawful intentions of the testator, it is a legal question for the court to
interpret the will and carry out the testator’s wishes.”).  Based on our review
of the record, it appears that each of the children received an equal $89,175
share of the estate and that such a distribution coincides with Caroline’s
intent, as expressed in her “Last Will and Testament.”  As a result, we
overrule Jarvis’s fourth issue.

V. 
Conclusion

 

            We
affirm the judgment of the trial court.

________________________

                                                                                                                                Rogelio
Valdez

                                                                                                Chief
Justice

 

Delivered
and filed the 

21st
day of December, 2010.

 









[1]
In a later-filed affidavit, Frank stated that he is domiciled in Darien,
Georgia, and that the other beneficiary under Caroline’s will, Jarvis and
Frank’s brother, co-appellee, John Shaw Feild, is domiciled in St. Petersburg,
Florida.





[2]
According to Jarvis, the Tennessee property consists of ninety-seven acres of
land.

 





[3]
John filed several letters with the trial court contesting Jarvis’s assessment
of the situation.  John alleged that Jarvis was estranged from the family and
had depleted the value of much of the estate in the one year that she served as
Caroline’s guardian.  John also described the property that Jarvis was awarded
as follows:

 

The house located at 1185 Parkwood
Place, Brownsville, Texas[,] was occupied and insured until Mary [Feild] Jarvis
evicted Inez Salas and left the property to be vandalized.  Over $8,000 in
damages were done to the property.  Frank E. Field [sic] secured the house,
creating an asset rather than a liability.  He sold it at an excellent price[,]
which created an income for his sister.  The note can be sold to a 3rd party if
she so desires. 

 

With regard to the Tennessee
property, John stated that:

 

The “Noncertified Appraisal” dated
2007 was not disclosed on the final account of Mary Field [sic] Jarvis and her
figure of $2,200,000 makes a mockery of this court.  In 2003, a neighbor
offered $70,000.  The topography of the property [is] almost straight up and
down and it does not lend itself to development or even a 3-way division. . .
.  It was in our family in the 1800’s[,] and it was Caroline’s intention that
it remains as such. . . .  If Mary Field [sic] Jarvis is not willing to accept
the appraised value which, once again, she did not contest at the time of the
final accounting, I recommend that she pay for her own independent and
certified appraisal of the property at her own expense.

 





[4]
Apparently, Jarvis did not attend the February 23, 2010 hearing.  Furthermore,
the record does not contain a reporter’s record for the February 23, 2010
hearing, or any other hearing conducted in this matter.  In her docketing
statement filed with this Court, Jarvis represented that no reporter’s record
was made for any of the hearings in this matter.  This statement is dubious in
light of the fact that counsel for appellees included an excerpt from the
reporter’s record from the February 23, 2010 hearing.  Though we recognize that
documents solely appearing in the appendix of an appellate brief are not part
of the record and are generally not considered on appeal, see Till v. Thomas,
10 S.W.3d 730, 733-34 (Tex. App.–Houston [1st Dist.] 1999, no pet.), it is
noteworthy that the transcript reflects that Jarvis was provided notice by
appellees’ counsel and by the trial court, and the trial court specifically
noted that “[s]he [Jarvis] knows that she was supposed to be here.”  In
addition, Jarvis admits in her reply brief that she received “an ‘Order’ titled
‘Motion for Continuance’ from the Cameron County court, which said it [the
final hearing] would be heard on February 23, 2010; however, it did not summon
me to be present, state the nature of the hearing, nor provide any documents.” 


 





[5]
Section six of the probate code,
entitled “Venue for Probate of Wills and Administration of Estates of
Decedents,” provided the following, in relevant part:

 

Wills shall be admitted for probate,
and letters testamentary or of administration shall be granted:

 

(a)    In the county where the deceased
resided, if he had a domicile or fixed place of residence in this State.

 

(b)   If the deceased had no domicile or
fixed place of residence in this State but died in this State, then either in
the county where his principal property was at the time of his death, or in the
county where he died.

 

(c)    If he had no domicile or fixed place
of residence in this State, and died outside the limits of this State, then in
any county in this State where his nearest of kin reside.

 

(d)   But if he had no kindred in this
State, then in the county where his principal estate was situated at the time
of his death. . . .

 

Tex. Prob. Code Ann. § 6 (Vernon 2003).  Although much of the probate code
was amended or repealed in 2009, section six remains in effect, though it is
scheduled to be renumbered as section six in the Texas Estates Code on January
1, 2014.  See Act of June 19, 2009, 81st Leg., R.S., ch. 680, § 2, 2009
Tex. Gen. Laws 1511, 1726 (current version at Tex.
Prob. Code Ann. § 6).

 





[6]
We reject Frank and John’s waiver contention as it relates to appellant’s
notice of appeal.  Texas Rule of Appellate Procedure 25.1(d) describes the required
contents for a proper notice of appeal.  Specifically, rule 25.1(d) provides
that, among other things, the notice of appeal:  (1) “identify the trial court
and state the case’s trial court number and style”; (2) “state the date of the
judgment or order appealed from”; (3) “state that the party desires to appeal”;
(4) “state the court to which the appeal is taken . . .”; and (5) “state the
name of each party filing the notice.”  Tex.
R. App. P. 25.1(d).  Rule 25.1(d) does not require Jarvis to clearly articulate
her specific appellate arguments in her notice of appeal to prevent waiver.  See
id.  Moreover, Frank and John have not cited any authority supporting their
contention.  Based on our review of the record, we conclude that Jarvis’s
notice of appeal complies with rule 25.1(d) and that she properly asserted her
arguments in her appellate brief.  See id.

 





[7]
It is also noteworthy that Jarvis did not file a special appearance in the
Cameron County court challenging the Cameron County court’s personal and
subject-matter jurisdiction.  See Tex.
R. App. P. 33.1; Anchia v. DaimlerChrysler AG, 230 S.W.3d 493,
500 n.1 (Tex. App.–Dallas 2007, pet. denied) (providing that special appearance
issues not raised by an appellant to a trial court are generally waived on
interlocutory appeal).





[8]
In Crowson v. Wakeham, the supreme court adopted the following test
regarding the appealability of probate orders:

 

If there is an express statute,
such as the one for the complete heirship judgment, declaring the phase of the
probate proceedings to be final and appealable, that statute controls. 
Otherwise, if there is a proceeding of which the order in question may
logically be considered a part, but one or more pleadings also part of that
proceeding raise issues or parties not disposed of, then the probate order is
interlocutory.  For appellate purposes, it may be made final by a severance
order, if it meets the severance criteria, as did the order in the present
case. . . .  A severance order avoids ambiguities regarding whether the matter
is appealable.  Litigants can and should seek a severance order either with the
judgment disposing of one party or group or parties, or seek severance as
quickly as practicable after the judgment.

 

897 S.W.2d 779, 783 (Tex. 1995).





[9]
The record reflects that the real property and the majority of Caroline’s
personal property was appraised and listed in the inventory and appraisals
document filed by Frank and approved by the Cameron County court.  See Tex. Prob. Code Ann. § 248 (Vernon
Supp. 2010) (providing that the court shall appoint disinterested persons to
appraise the property contained in the estate).  Clearly, Jarvis is unhappy
with what she considers low appraisals of the real property contained in the
estate and seems to suggest that appraisals of the property should continue
until she receives a valuation of the property to her liking.  It appears that
Jarvis also asserts that the Presidio County property should have been
appraised; however, the record contains an appraisal of the property conducted
by Bette Lu Rogers, a state licensed real estate appraiser.