**Diane and Lawrence FURST, Appellants,**

**v.**

**Millie and William SMITH, Appellees.**

**No. 01–03–00137–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 29, 2005.

Mark Alan Sanders, Law Office of Mark A. Sanders, Houston, TX, for Appellants.

Miles Klaff, Brown Sims, P.C., Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

ELSA ALCALA, Justice.

Appellants, Lawrence and Diane Furst, bring this restricted appeal pursuant to rule 30 of the Rules of Appellate Procedure to challenge a no-answer default judgment rendered against them and in favor of appellees, Millie and William Smith, pursuant to the Deceptive Trade and Consumer Protection Act (DTPA). See TEX.R.APP. P. 30.[1] The trial court's final judgment awarded compensatory and punitive damages and attorney's fees and followed an interlocutory default judgment rendered on liability. The Fursts contend that the trial court erred by rendering the default judgment because the face of the record demonstrates a lack of compliance

---

1. A restricted appeal challenging a default judgment is a direct attack on the judgment. *Roventini v. Ocular Sciences, Inc.*, 111 S.W.3d 719, 721 (Tex.App.-Houston [1st Dist.] 2003, no pet.).

with rules 106 and 107 of the Rules of Civil Procedure, which govern, respectively, methods and return of service of process. *See* TEX.R.APP. P. 106, 107. We reverse and remand.

## Background

The Smiths' pleadings allege that they entered into an agreement with the Fursts to rent a house on Dumfries Road in Houston, Texas. Hedley Karpas Properties, Inc.,[2] served as listing agent for the transaction. The parties' lease contemplated that the Fursts would renovate the house extensively, but the Smiths alleged that the renovations were incomplete and that the house was uninhabitable, had no electricity, had running water in one sink only, and was infested with fleas when the Smiths arrived in Houston to occupy the house.

Relying on the DTPA, the Smiths sued the Fursts and the Karpas agency and sought damages for advanced rent payments, for emotional injuries, and for expenses they incurred in seeking medical assistance for themselves and their pet, for fumigating their garments and household goods, for temporary housing, and for packing, moving, and storing their goods while they lived in temporary housing. The Smiths also sought punitive damages based on claims that the Fursts acted maliciously.

The Smiths filed suit against the Fursts and the agency on September 6, 2000. They filed their second amended petition on April 12, 2001, when they also filed a verified motion for substituted service against both defendants. The Smiths' motion alleged that, although the Fursts were no longer residents of Texas and had moved to California, they were residents of Texas and engaged in business in Texas when the lawsuit arose and therefore had sufficient contacts with Texas based on their leasing the Dumfries house to the Smiths. The Smiths' motion described two unsuccessful efforts to serve the Fursts, first through the Karpas agency and then at an address in Los Angeles County provided to them by the Karpas agency. The motion then stated that Diane Furst's father, Warren S. Bloch, was "familiar with the case" and had "previously reimbursed some of the monies [owed][3] by [the Fursts]." In support of that claim, the Smiths' motion asserted that a letter Bloch had written "demonstrat[ed] his involvement in the case." The single-page transmission on which the Smiths relied had been sent by telecopier from Bloch's accounting office in Pittsburgh, Pennsylvania to the Fursts' codefendant, the Karpas real estate agency, and contained the following message: "On behalf of Lawrence & Diane Furst, we will wire to you $4,500 as soon as possible. This should take no more than four or five days. Thank-you for all of your cooperation. /s/ W.S. Bloch." The Smiths' motion concluded by requesting authorization to

> serve defendants Diane Furst and Lawrence Furst by leaving a true copy of the citation and the attached petition with Warren S. Bloch, Certified Public Accountant. Warren S. Bloch is defendant Diane Furst's father and defendant Lawrence Furst's father-in-law.

The trial court signed an order granting the Smith's motion for substituted service on April 20, 2001. This order reflects that the trial court considered the motion and the supporting affidavit and authorized substituted service, as requested by the

**2.** The real estate agency is not a party to this appeal. The Smiths settled with the agency, which nonsuited its cross-claim against them.

**3.** "Owned" in original.

Smiths, "by delivery to Warren S. Bloch, Certified Public Accountant at 5802 Douglas Street, Pittsburgh, Pennsylvania 15217–2102." The order also stated that service on Bloch "will be reasonably effective" to give the Fursts notice of the Smiths' lawsuit. Based on the return of service on Bloch, the trial court rendered an interlocutory default judgment on liability and later rendered a final judgment awarding the Smiths damages and attorney's fees after conducting a bench trial.

### Standards and Scope of Review

#### A. Substituted Service on Affidavit and Return—De Novo Review

▇▇▇ When a defendant has not answered, a trial court acquires jurisdiction over that defendant solely on proof of proper service. Tex.R. Civ. P. 107 (prohibiting rendition of default judgment unless proof of proper service or process and return, whether in compliance with governing rules or as ordered by court, have been on file for 10 days); see Wilson v. Dunn, 800 S.W.2d 833, 836 (Tex.1990) (rejecting defendant's admitted receipt of suit papers as sufficient to confer jurisdiction in context of former writ-of-error practice);[4] see also Wright Bros. Energy, Inc. v. Krough, 67 S.W.3d 271, 273 (Tex.App.-Houston [1st Dist.] 2001, no pet.) ("Jurisdiction over a defendant must be established in the record by an affirmative showing of service of citation...."); Nichols v. Nichols, 857 S.W.2d 657, 659 (Tex. App.-Houston [1st Dist.] 1993, no writ) (rejecting actual notice of lawsuit as sufficient to confer jurisdiction over improperly served defendant in context of bill of review of default judgment modifying di-

vorce decree) (citing Wilson, 800 S.W.2d at 834); Heth v. Heth, 661 S.W.2d 303, 304–05 (Tex.App.-Fort Worth 1983, writ dism'd) (holding same, in context of non resident defendant). Lack of proof of proper service constitutes error on the face of the record that defeats the trial court's jurisdiction. See Primate Constr., Inc. v. Silver, 884 S.W.2d 151, 153 (Tex. 1994) (decided under former writ-of-error practice); Hercules Concrete Pumping Serv., Inc. v. Bencon Management & Gen. Contracting Corp., 62 S.W.3d 308, 311 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

Personal jurisdiction comprises both of the following elements: the defendant must first be amenable to the jurisdiction of the court, and, if so, the plaintiff must invoke that jurisdiction by valid service of process on the defendant. Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 200 (Tex.1985); Coronado v. Norman, 111 S.W.3d 838, 841 (Tex.App.-Eastland 2003, pet.denied) (citing Kawasaki, 699 S.W.2d at 200, in context of restricted appeal). The Fursts dispute the service element service here.

▇▇▇ Whether a Texas court has personal jurisdiction is a question of law. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex.2002) (stating, in special appearance context, that courts of appeals review trial court's factual findings for legal and factual sufficiency and review trial court's legal conclusions de novo); See Wilson, 800 S.W.2d at 836 ("Jurisdiction is dependent upon citation issued and served in a manner provided by law.") (Emphasis added.); see Coronado, 111 S.W.3d at 841.

---

4. Restricted appeals under rule 30 of the Rules of Appellate Procedure superceded writ-of-error practice under former rule 45. See Tex.R.App. P. 45, Tex. B.J. 570 (Tex.1986, superceded 1997); Hercules Concrete Pump-

ing Serv., Inc. v. Bencon Management & Gen. Contracting Corp., 62 S.W.3d 308, 310 n. 4 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (citing same).

Rule 106(b), on which the Smiths and the trial court relied in this case, governs substituted service, and rule 107 states the standards by which the trial court evaluates return of service. *See* TEX.R. CIV. P. 106(b), 107. In addition, rule 108 incorporates the standards of both rules and imposes additional requirements for service and return for defendants who, like the Fursts, are not residents of Texas. TEX.R. CIV. P. 108. Strict compliance with the rules must affirmatively appear of record if we are to sustain a default judgment based on substituted service. *Primate Construction*, 884 S.W.2d at 152; *Hercules Concrete*, 62 S.W.3d at 311; *Olympia Marble & Granite v. Mayes*, 17 S.W.3d 437, 444 (Tex.App.-Houston [1st Dist.] 2000, no pet.). It is the responsibility of the party requesting service, in this case, the Smiths, to ensure that (1) proper service is accomplished and (2) that the record reflects proper service. *Primate Construction*, 884 S.W.2d at 152.

Subsection (b) of rule 106 provides alternatives for substituted service when the personal service and mail options stated in subsection (a) have "not been successful." *See* TEX.R. CIV. P. 106. Substituted service is obtainable on motion, filed with the trial court, supported by an affidavit stating (1) the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and (2) specific facts showing that service has been attempted under either subsection of rule 106(a) at the location named in the affidavit, but did not succeed. *See id.*

When, as reflected by the recitals in the trial court's order and the face of the record here, a trial court authorizes substituted service on proof by affidavit, and thus without an evidentiary hearing, the ruling results from the trial court's applying the standards of rule 106(b) to the facts stated in the affidavit offered in support of substituted service. *See* TEX.R. CIV. P. 106(b). Similarly, the trial court's acceptance of the return of service results from the court's applying the standards stated in rule 107 to the facts stated in the officer's return. *See id;* TEX.R. CIV.P. 107.

When a trial court's ruling results from applying the law to the facts, we traditionally review the ruling as a matter of law, i.e., de novo. *See BMC Software Belgium*, 83 S.W.3d at 794; *see also In re R.J.H.*, 79 S.W.3d 1, 6 (Tex.2002) (contrasting trial court's credibility-based findings, to which a reviewing court must defer, from its application of law to facts, which a reviewing court reviews de novo "because the trial court is in no better position to decide legal issues than the appellate court"); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (distinguishing same, in context of mandamus review). Moreover, personal jurisdiction over a defendant "depends on citation issued and served as provided by law," and we may not indulge any "presumptions in favor of valid issuance, service, and return of citation in the face of a [restricted appeal] attack on a default judgment." *Primate Construction*, 884 S.W.2d at 152; *Wilson*, 800 S.W.2d at 836; *Hercules Concrete*, 62 S.W.3d at 310; *Olympia Marble & Granite*, 17 S.W.3d at 444.

We hold that de novo review is appropriate because (1) "failure to affirmatively show strict compliance with the Rules of Civil Procedure renders ... attempted service invalid and of no effect," *Wilson*, 800 S.W.2d at 836; (2) the burden is on the plaintiff, here the Smiths, to ensure that the record reflects proper service, *Primate Construction*, 884 S.W.2d at 152; and (3) a return of service that demonstrates lack of compliance will preclude rendition of a default judgment, as there is no presumption of proper service. *Id.* at 152–53. We

apply that standard, therefore, to review the trial court's authorizing substituted service based on the Smiths' sworn motion and affidavit under rule 106(b) and the trial court's rendering the default judgment on liability based on the return of service under rules 107 and 108. *See Coronado*, 111 S.W.3d at 841–42.[5]

## B. Restricted Appeal

■■■■ To prevail in their restricted appeal, the Fursts must demonstrate that they (1) filed their notice of appeal within six months after the final judgment was signed, (2) were parties to the litigation, (3) did not participate in the hearing resulting in the final judgment, (4) did not timely file postjudgment pleadings, and that (5) there is error on the face of the record. *See Norman Communications v. Texas Eastman Co.*, 955 S.W.2d 269, 270 (Tex.1997) (decided under former, writ-of-error practice); *Roventini v. Ocular Sciences, Inc.*, 111 S.W.3d 719, 721 (Tex.App.-Houston [1st Dist.] 2003, no pet.); *see also* Tex.R.App. P. 26.1(c), 30 (stating elements and notice requirements for restricted appeal). The last element is the only disputed issue in this case. Our scope of review in a restricted appeal is the same as that in an ordinary appeal, in that we review the entire case, but we consider only "the face of the record," which consists of all the papers filed in the trial court when it rendered the default judgment. *See Nor-*

*man Communications*, 955 S.W.2d at 270; *Roventini*, 111 S.W.3d at 722.

## Ruling on Substituted Service

### A. Rule 106(b)(2)—Substituted Service "Reasonably Effective" for Notice?

■■■ In their third issue, the Fursts contend that there is error on the face of the record because the affidavit offered by the Smiths to support substituted service on Diane Furst's father, Warren S. Bloch, at his accounting office in Pittsburgh, Pennsylvania did not sufficiently demonstrate that service on Bloch would be "reasonably effective" to give the Fursts notice of the Smiths' lawsuit. We agree.

The Smiths' motion averred only that Diane Furst's father, Warren S. Bloch, was "familiar with the case" and had reimbursed some of the monies that the Fursts owed, as shown by a single-page telecopier transmission sent from Bloch's accounting office in Pittsburgh, Pennsylvania to the office of the Fursts' codefendant, the Karpas real estate agency, in which Bloch stated that he would forward $4,500 to the agency on behalf of the Fursts. The Smiths claimed that the letter demonstrated Bloch's "involvement in the case." But, even if this is true, Bloch's mere "involvement in the case" by sending funds to the Karpas real estate agency does not demonstrate that serving him at his office in Pittsburgh, Pennsylvania would be "reasonably effective" to accomplish notice to

---

5. We distinguish rule 106(b) rulings made other than based on proof by affidavit, as, for example, after an evidentiary hearing, which would require us to defer to the trial court's discretionary, credibility-based determinations. *See In re R.J.H.*, 79 S.W.3d 1, 6 (Tex. 2002) (stating that credibility-based findings require deference); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (same, in context of mandamus review). Similarly, on receipt of an affidavit that satisfies rule 106(b) the trial court *"may"* and, therefore, need not,

authorize substituted service which, as shown from the affidavit or other evidence, is reasonably calculated to provide notice. *See State Farm Fire & Cas. Co. v. Costley*, 868 S.W.2d 298, 299 (Tex.1993) (emphasis added); *Coronado v. Norman*, 111 S.W.3d 838, 841 (Tex.App.-Eastland, pet.denied) (recognizing trial court's discretion to authorize substituted service "but only after a proper affidavit is filed that states specifically the facts showing that service has been attempted").

the Fursts, in California, of the lawsuit and the allegations by the Smiths against them.

Substituted service pursuant to rule 106(b) contemplates delivery to a "proper representative" of the defendant when it is impractical to summon the defendant by personal service. 3 McDONALD & CARLSON, TEXAS CIVIL PRACTICE § 11.58 (2d ed.2000). Rule 106(b)(2) thus requires not only a showing that personal service under either of the alternatives of subsection 106(a) has been "unsuccessful," but also a showing that the person upon whom substituted service is requested is a proper representative so that the substituted service requested will be "reasonably effective" to notify the named defendant. *See id.*

Despite his stated family relationship with the Fursts, and despite his having indicated that he would be sending funds to the codefendant real estate agency on their behalf, nothing on the face of the record before us demonstrates that Bloch was the Fursts' "proper representative" to the extent that notice to him was reasonably effective notice to them. The situation in the case before us differs, therefore, from *Magan v. Hughes Television Network, Inc.*, 727 S.W.2d 104, 105 (Tex. App.-San Antonio 1987, no writ), in which the movant seeking substituted service supplied the affidavit of a deputy sheriff, in which he stated that other communications delivered to the defendant at the substituted service location had reached him at that location. *Cf. Marble & Granite*, 17 S.W.3d at 445 (distinguishing *Magan* and holding that nothing in affidavit offered to support substituted service pursuant to subsection (b)(1) of rule 106 indicated that defendant would be at substituted service location at time indicated in motion). Similarly, the Smiths' affidavit states no facts on which the trial court might have relied to conclude that Bloch was the Fursts' agent

with regard to the Smiths and that service on him would, therefore, be reasonably effective to accomplish notice to the Fursts. *See, e.g., Gilbert v. State*, 623 S.W.2d 349, 353 (Tex.Crim.App.1981) (recognizing that defendant may authorize another to accept service, but relying on prohibition against any presumptions in favor of valid service to hold that absence of showing that defendant had authorized service on alleged agent rendered substituted service on alleged agent fatally defective and defeated jurisdiction of trial court to consider civil bond-forfeiture case).

After reviewing the face of the record de novo and in accordance with the prohibition against indulging any presumptions in favor of proper service, we conclude that the Smiths' affidavit did not allege sufficient facts to warrant the trial court's authorizing substituted service on Bloch pursuant to rule 106(b)(2). We further conclude that the defects in the affidavit constitute error on the face of the record that renders the substituted service authorized by the trial court ineffective to accomplish the trial court's personal jurisdiction over the Fursts.

We sustain the Fursts' third issue.

**B. No Copy of Petition Attached to Citation—Rule 106(b)**

 In their fourth issue, the Fursts contend that there is error on the face of the record because the record does not reflect that the substituted service effected delivery of the Smiths' second amended original petition. We agree.

 All methods encompassed in rule 106 contemplate that a copy of the plaintiff's live petition accompany the citation. Subsections (a)(1)-(2) and (b)(1) state this requirement explicitly. TEX.R. CIV. P. 106(a)(1)-(2), (b)(1). Subsection (b)(2) of

rule 106, at issue here, permits methods that the court deems "reasonably effective" to accomplish notice of the lawsuit. *See* TEX.R. CIV. P. 106(b)(2). Although rule 106(b)(2) does not specifically require that a copy of the petition accompany the citation, in authorizing "other" methods of service that a trial court may deem reasonably effective to accomplish notice, rule 106(b) necessarily requires that the plaintiff receive a copy of the live petition. *See Primate Construction,* 884 S.W.2d at 152 (holding service defective because return recited that copy of *second* amended citation served, but sworn return of service recited that *original* petition, which had not yet named defendant, actually served).

Because we indulge no presumptions in favor of compliance with service requirements in a restricted appeal, lack of service of the live pleadings against a defendant cannot, therefore, be sufficiently "reasonably effective" to accomplish the degree of notice required to establish personal jurisdiction over a defendant, as contemplated by rule 106(b)(2). *See Midwest Piping & Supply Co. v. Page,* 128 S.W.2d 459, 462 (Tex.Civ.App.-Beaumont 1939, writ ref'd); *see also Woodall v. Lansford,* 254 S.W.2d 540, 540–543 (Tex.Civ.App.-Fort Worth 1953, no writ) (applying rule rejecting presumptions in support of proper service to hold that return reciting delivery of "a true copy of this citation, together with the accompanying true and correct copy of the *Citation to* plaintiff's petition" did not demonstrate delivery of copy of petition and was fatally defective) (emphasis in original).

The civil process requests for Diane and Lawrence Furst specified that the Smiths' second amended original petition was the instrument to be served. As excerpted above, the Smiths requested authorization for substituted service on Bloch "by leaving a true copy of the *citation and the attached petition* with Warren S. Bloch, Certified Public Accountant." (Emphasis added.) The record contains two verified returns of service, one for Diane Furst and a second for Lawrence Furst. Each return contained the sworn statement, by a deputy sheriff of Allegheny County, Philadelphia, with a handwritten notation that the deputy had served "citation" on Warren Bloch at 2:45 p.m. on May 3, 2001. Neither return, however, states that the deputy's service of "citation" included service of the Smiths' second amended original petition, despite the requirements of rule 106(b), and although the Smiths' motion for substituted service specified that their second amended original petition was to accompany the citation.

The recitals in the return of service are "prima facie evidence of the facts" stated in the return and "carry so much weight" that the party charged with obtaining service cannot rebut the recitals, which are given no less weight when they impeach, rather than support proper service. *See Primate Construction,* 884 S.W.2d at 152–53. The return, therefore, is not "a trivial, formulaic document." *Id.* at 152.

Because the return of service here does not state that the requisite copy of the Smiths' second amended original petition had been served, the face of the record does not affirmatively reflect compliance with rule 106(b)(2) and is error on the face of the record that also renders the attempted service defective and defeats the trial court's exercise of personal jurisdiction over the Fursts. *Id.* at 153; *Hercules Concrete Pumping Service,* 62 S.W.3d at 311.

We sustain the Fursts' fourth issue.

## Conclusion

We have concluded that the face of the record of this restricted appeal reflects

error in authorizing substituted service in at least two respects and therefore need not address the Fursts' remaining issues. Having thus concluded that the trial court lacked personal jurisdiction over the Fursts due to lack of proper service of process, we reverse the final, default judgment and remand the cause.