**Opinion issued April 19, 2022**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-20-00684-CV**

———————————

**RINA HUTAGAOL, Appellant**

**V.**

**JAKA JANAKA, Appellee**

---

**On Appeal from the 328th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 20-DCV-270246**

---

## MEMORANDUM OPINION

Jaka Janaka filed a petition for divorce from his wife, Rina Hutagaol. Because

Rina was located in Indonesia and Jaka's first several service attempts were

unsuccessful, the trial court granted Jaka's motion for substitute service under Texas

Rule of Civil Procedure 106. When Rina failed to appear and answer, the trial court

granted a default judgment and entered a final divorce decree. In this restricted appeal, Rina contends that the default judgment and final divorce decree were improper because error is apparent on the face of the record. We reverse and remand.

## BACKGROUND

Jaka and Rina had been married for about 15 years and lived in Fort Bend County with their two children. In December 2019, the family traveled to Indonesia for vacation. After an altercation between Jaka, Rina, and Rina's two brothers that sent Jaka to the hospital, Rina took the children to her parents' house in Jakarta. When Jaka was released from the hospital, he went to Rina's parents' house, but Rina's parents would not allow Jaka to see Rina or the children; Jaka tried messaging his wife but received no response. Jaka returned to Texas, without his wife or children, on their scheduled return flight. Jaka filed a petition for divorce shortly after he returned, seeking the exclusive right to designate the primary residence of the children and enroll them in school.

Because Jaka believed Rina to still be in Indonesia at her parents' house, Jaka filed a motion to appoint a law firm in Jakarta to serve process on Rina, which the trial court granted. A law firm employee attempted, unsuccessfully, to serve Rina at her parents' house five times; the last three times he tried, security guards to the gated community stopped him from entering the community altogether. Jaka then filed a motion for substitute service. The trial court granted the motion and ordered

that process could be served by leaving copies of the citation and petition with any person over 16 at Rina's parents' house, by attaching the copies to the front door of the house, or, if either of those methods proved impossible, then by delivering the copies to a security guard at the front gate of the community.

The law firm employee signed an affidavit stating a security guard outside the community denied him access to the parents' house, and so he left copies of the citation and petition with the security guard at the front gate.

Rina never answered or appeared in the lawsuit. The trial court, finding that Rina had been duly cited and defaulted, granted the divorce petition. The final divorce decree granted Jaka the exclusive right to establish the children's primary residence, ordered Rina to pay child support, found credible evidence of the risk of international abduction and ordered Rina to execute a $50,000 bond to offset the costs of recovering the children if they were abducted, found Rina had previously failed to comply with court orders regarding the children and ordered Rina to execute a $250,000 compliance bond, and awarded all of the assets and debts of the community estate to Jaka.

Rina now appeals the trial court's default judgment and final divorce decree through a restricted appeal.

## DISCUSSION

Rina alleges that the trial court's order authorizing substitute service was defective because it authorized a substitute method of service that was not "reasonably effective" to give her notice of the suit and therefore did not strictly comply with the Texas Rules of Civil Procedure; she argues this defective order constitutes error on the face of the record. We agree.

### A.  Applicable Law

#### 1.  Restricted appeal

A restricted appeal allows a party who did not participate in a lawsuit to correct an erroneous judgment. *In re E.K.N.*, 24 S.W.3d 586, 590 (Tex. App.—Fort Worth 2000, no pet.); *see also* TEX. R. APP. P. 30 (authorizing restricted appeals). To sustain a restricted appeal, the filing party must show that: (1) she filed notice of the restricted appeal within six months after the date the judgment was signed; (2) she was a party to the underlying lawsuit; (3) she did not participate in the hearing that resulted in the judgment complained of and did not timely file any post-judgment motions or requests for findings of fact and conclusions of law; and (4) error is apparent on the face of the record. *Ex parte E.H.*, 602 S.W.3d 486, 495 (Tex. 2020); *see also* TEX. R. APP. P. 30 (stating elements (1)–(3)). The only element in dispute here is whether there is error apparent on the face of the record. For purposes of a restricted appeal, the face of the record consists of "all the papers on

file in the appeal," including the reporter's record. *Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (per curiam) (referring to "statement of facts," which is now called reporter's record).

## 2. Substitute service

Texas Rule of Civil Procedure 106(a) provides the methods of serving a citation. Unless the citation or court order directs otherwise, a citation must be served by delivering a copy of the citation and petition to the defendant in person or by registered or certified mail. TEX. R. CIV. P. 106(a). On a motion with a supporting affidavit, a trial court may authorize a substitute method of service if the methods attempted under Subsection (a) have been unsuccessful. TEX. R. CIV. P. 106(b). Under Rule 106(b), the court may authorize service by leaving a copy of the citation and petition with anyone older than 16 at a location where the defendant can probably be found, as stated in the affidavit, or in any other manner that the affidavit or other evidence shows will be "reasonably effective" to give notice of the suit. TEX. R. CIV. P. 106(b). Rule 108a authorizes methods of service on a party in a foreign country, including service as provided by Rule 106 and "by other means . . . as the court orders," but the rule states that the method of service "must be reasonably calculated" to give "actual notice of the proceedings to the defendant in

time to answer and defend." TEX. R. CIV. P. 108a.[1] A court may not issue a default judgment unless proof of service in compliance with the rules has been filed. TEX. R. CIV. P. 107(h).

When a defendant has not answered in a lawsuit, a trial court acquires personal jurisdiction over that defendant solely on proof of proper service. *Furst v. Smith*, 176 S.W.3d 864, 868 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing TEX. R. CIV. P. 107). A default judgment can only be sustained if the record before the trial court affirmatively shows the defendant was served in "strict compliance" with the Texas Rules of Civil Procedure. *Spanton v. Bellah*, 612 S.W.3d 314, 316 (Tex. 2020) (per curiam); *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994) (per curiam). When examining a default judgment, we indulge no presumptions in favor of valid issuance, service, or return of citation. *Spanton*, 612 S.W.3d at 316. Failure to comply strictly with the Texas Rules of Civil Procedure constitutes reversible error on the face of the record. *Ins. Co. of State of Pa. v. Lejeune*, 297 S.W.3d 254, 256 (Tex. 2009) (per curiam).

---

[1] Rule 108a was amended effective December 31, 2020, and currently authorizes service on a party in a foreign country as provided by Rule 106(a), rather than by Rule 106 in its entirety, but neither party disputes that the previous version of the rule authorizing service as provided by Rule 106 in its entirety was in effect when Jaka attempted to serve Rina in this lawsuit. *See* Order Amending Texas Rules of Civil Procedure 106 and 108a, Misc. Docket No. 20-9103 (Tex. Aug. 21, 2020), https://www.txcourts.gov/media/1449613/209103.pdf.

**B.      Analysis**

Rina contends error is apparent on the face of the record because service was defective. Specifically, Rina argues that the trial court's order authorizing a substitute method of service did not strictly comply with Rule 106 because the order authorized a substitute method of service that was not "reasonably effective" to give her notice of the lawsuit. Relying on this Court's opinion in *Furst v. Smith*, Rina argues that there was no evidence that the security guard at the front gate to her parents' gated community was a proper representative for her or that serving the security guard would be "reasonably effective" or "reasonably calculated" to provide her with notice of the lawsuit. *See* 176 S.W.3d at 870–71; TEX. R. CIV. P. 106, 108a. We agree.

Jaka's affidavit supporting his motion for substitute service stated that Rina was staying at her parents' house in Indonesia, which was located in a gated community that was "very hard to gain access to." The affidavit stated Rina had sent him two emails from a specific email address in January of 2020, and he believed that Rina was still using that email account. At the hearing on the motion for substitute service, Jaka's counsel asked to leave copies of the petition and citation at the door to Rina's parents' house, or if that did not work, then for other alternatives, like certified mail or email. The trial court agreed to allow substitute service by leaving copies of the citation and petition with a person over 16 at Rina's parents'

7

house or by posting copies on the door there. The trial court then questioned Jaka and his counsel about entering the gated community:

> THE COURT: Is there like a person at the front gate or how does it work?
>
> [COUNSEL]: There is somebody there.
>
> MR. JANAKA: There is a security guard at the front gate.
>
> THE COURT: How big of an enclave is this? Like how many apartments? Are there a million, a hundred?
>
> MR. JANAKA: It's like a housing. It's like a compound, maybe 100 houses.
>
> THE COURT: It's a hundred houses in a compound?
>
> MR. JANAKA: Uh-huh.
>
> THE COURT: Do you think the security guard would know who Ms. Rina is?
>
> MR JANAKA: Yes.
>
> THE COURT: How do you know that?
>
> MR. JANAKA: Because she is living there.
>
> THE COURT: Okay. And he is a security guard at the front gate?
>
> MR. JANAKA: Yes.

As this Court stated in *Furst*, substitute service under Rule 106(b) contemplates delivery to a "proper representative" of the defendant. 176 S.W.3d at 871 (quoting MCDONALD & CARLSON, TEXAS CIVIL PRACTICE § 11.58 (2d ed. 2000)). In other words, the rule requires a showing that the person upon whom

8

substitute service is requested is a proper representative so that the substitute service will be "reasonably effective" to notify the named defendant. *Id.*

As in *Furst*, nothing on the face of the record here demonstrates that the security guard at the front gate to Rina's parents' housing community was Rina's "proper representative" or agent such that service on the security guard was reasonably effective to notify her of the lawsuit. *See id.* (holding substitute service to defendant's father not reasonably effective to give notice to defendant despite father's limited business dealings on behalf of defendant). Rina argues there was no evidence, for example, that the security guards had previously delivered documents or other items to community residents, no evidence of how many security guards worked at the front gate, and no evidence that a security guard at the front gate knew the identity and residence of each person in the community. Jaka's statement that the security guard would know Rina was conclusory. *See, e.g.*, *Lenoir v. Marino*, 469 S.W.3d 669, 686 (Tex. App.—Houston [1st Dist.] 2015), *aff'd*, 526 S.W.3d 403 (Tex. 2017) ("A conclusory statement is one that does not provide the underlying facts to support the conclusion."); *see also Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990) (stating substitute service "may not properly issue on a motion supported by an affidavit that is conclusory or otherwise insufficient"). Jaka did not provide a basis for his conclusion that the security guard would know Rina other

than the fact that Rina lived in the gated community, but she had lived there for only a few months, and there were about a hundred other houses in the community.

Jaka argues that the court's order authorizing substitute service was proper because the process server had already attempted service five times and could not reach Rina. However, after five failed attempts, the error was not in ordering substitute service but in ordering substitute service that was not reasonably effective to notify Rina of the lawsuit.

Jaka also tries to distinguish the facts of *Furst* from the present case. In *Furst*, he argues, the person served—the father of one of the defendants—was in a different state from the defendants, whereas in this case, the security guard was located a few hundred yards from Rina. *See Furst*, 176 S.W.3d at 867. First of all, whether the security guard was located a few hundred yards from Rina is not a fact stated in the record. Second, the court in *Furst* did not find service on the father ineffective because of his distance from the defendants; rather, the court determined there was nothing in the record to show that the father was a proper representative or agent of the defendant. *Id.* at 871. Similarly, there is nothing in the record here to show the security guard was a proper representative or agent of Rina.

Jaka next argues there was no evidence in *Furst* that the father had close or frequent contact with the defendants, but similarly, in this case, there is no evidence that the security guard had close, frequent, or any contact with Rina. While Jaka

contends there is evidence in the record that the security guards knew Rina, the only evidence to that effect is Jaka's conclusory statement that the security guards would know Rina because she lived in the gated community.

Finally, Jaka argues that this case is more similar to *Magan v. Hughes Television Network, Inc.*, which the court in *Furst* sought to distinguish from the facts of that case. *See Magan v. Hughes Television Network, Inc.*, 727 S.W.2d 104 (Tex. App.—San Antonio 1987, no writ); *see also Furst*, 176 S.W.3d at 871 (distinguishing *Magan*). In *Magan*, the court found no error in substitute service at a particular address, even though there was conflicting evidence as to whether the defendant lived at that address, because the affidavit supporting substitute service stated that other communications delivered to that address had reached the defendant. 727 S.W.2d at 105. However, there is no evidence in the record here that Rina received any other communications left with the security guards. Thus, Jaka's attempts to distinguish this case from *Furst* are unavailing.

There was not sufficient evidence to show that substitute service on the security guard would be "reasonably effective" to give Rina notice of the suit. *See* TEX. R. CIV. P. 106(b). Therefore, the trial court's order authorizing substitute service was defective because the record does not affirmatively show the order was made in "strict compliance" with the Texas Rules of Civil Procedure. *See Spanton*, 612 S.W.3d at 316. The defective order constitutes an error on the face of the record

11

that renders the substitute service ineffective to establish the trial court's personal jurisdiction over Rina. *See Lejeune*, 297 S.W.3d at 256; *Furst*, 176 S.W.3d at 868.

We sustain Rina's first issue, and therefore we need not address her remaining issues. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

We reverse the trial court's default judgment and final divorce decree and remand this cause for further proceedings consistent with this opinion.


Gordon Goodman
Justice

Panel consists of Justices Kelly, Goodman, and Guerra.