**Opinion issued February 19, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00525-CV

_____

**DUKE OBARO, Appellant**

**V.**

**NORTH WOODLAND HILLS VILLAGE COMMUNITY ASSOCIATION, Appellee**

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-83951**

---

## MEMORANDUM OPINION

This is a direct appeal from a no-answer default judgment. Appellant Duke Obaro challenges both the judgment and an order denying his motion to vacate the judgment. He contends that service of process was improper on his agent pursuant to a recorded statutory durable power of attorney. He asserts that Estates Code

section 752.110(5) permits—but does not require—an agent to accept service of process, and his agent refused to accept it. In two issues on appeal, Obaro argues that (1) the default judgment was erroneous because there was no evidence the agent accepted service of process; and (2) the trial court abused its discretion by denying the motion to vacate the judgment because he presented uncontroverted evidence that his agent refused service. We affirm.

## Background

In December 2022, appellee North Woodland Hills Village Community Association sued Obaro for unpaid homeowner's association fees. The Association's petition alleged that Obaro owned real property subject to a recorded instrument requiring him to pay "assessments" to the Association, as well as interest, attorney's fees, and costs for collecting any unpaid assessments. The Association alleged that Obaro owed $3,286.80 in unpaid fees, and it requested a judgment for the unpaid fees, a lien on the property, foreclosure of the lien, attorney's fees, costs, and interest.

The Association amended the petition ten months later. The revisions related to service of process. Whereas the original petition stated that Obaro could be served personally, the amended petition stated that Obaro

> may be served with citation [] through his designated representative agent/attorney-in-fact DEOLA ALI, pursuant to [Obaro's] recorded Durable Power of Attorney, and the statutory authority of The Durable Power of Attorney Act, Chapter XII of the Texas Probate (Estates) Code (Title 2, Chapt. 752 et seq.), by serving such agent (attorney-in-

2

fact) [at the address provided], or such other place where [Obaro's] designated agent (attorney-in-fact) may be found.

(Emphasis omitted.) The amended petition attached a civil process request form requesting service on Ali as Obaro's agent.

The amended petition also attached a certified copy of the referenced power of attorney. The instrument is entitled "Statutory Durable Power of Attorney," and Obaro signed it and recorded it with the county clerk in 2011. It became effective immediately upon signing, and its authority extended even if Obaro were to become disabled or incapacitated. In relevant part (with emphasis removed), the instrument states:

> Notice: The powers granted by this document are broad and sweeping. They are explained in the Durable Power of Attorney Act, Chapter XII, Texas Probate Code. . . .[1]
>
> I, Duke Obaro, . . . appoint Deola Ali . . . as my agent (attorney-in-fact) to act for me in any lawful way with respect to all of the following powers except for a power that I have crossed out below.
>
> To withhold a power, you must cross out each power withheld.
>
> * * * *
>
> Claims and litigation[.][2]

---

[1] The Durable Power of Attorney Act was subsequently recodified in Estates Code Title 2, Subtitle P. Act of May 19, 2011, 82nd Leg., R.S., ch. 823, §§ 1.01, 3.02–.03, 2011 Tex. Gen. Laws 1901, 1901–17, 2094–95. Obaro focuses solely on the current language of the Act in the Estates Code, and we find no discernable differences. Accordingly, we consider only the Estates Code in our analysis.

[2] The power of attorney listed thirteen categories of powers, including property transactions, business operations, retirement transactions, tax matters, personal and family maintenance, and claims and litigation.

* * * *

If no power listed above is crossed out, this document shall be construed and interpreted as a general power of attorney and my agent (attorney in fact) shall have the power and authority to perform or undertake any action I could perform or undertake if I were personally present.

* * * *

On the following lines you may give special instructions limiting or extending the powers granted to your agent.

None.

* * * *

Unless you direct otherwise above, this power of attorney is effective immediately and will continue until it is revoked.

* * * *

This power of attorney is not affected by my subsequent disability or incapacity.

None of the powers were crossed out.

The citation was issued and served on Ali as Obaro's agent. The Association filed both the citation and return of service. The return of service was verified by the process server, and it stated that the citation and petition were "hand delivered" to Obaro "by serving through his designated representative agent/attorney-in-fact Deola Ali" at Ali's address. (Emphasis omitted.) Obaro did not file an answer. On the Association's motion, the trial court signed a final default judgment granting the Association the relief it requested.

Before the trial court's plenary power expired, Obaro moved to vacate the default judgment.[3] The motion contained an unsworn declaration from Ali—who is listed in the power of attorney as Obaro's agent and in the motion as Obaro's legal counsel—averring to the truth of the facts in the motion. *See* TEX. CIV. PRAC. & REM. CODE § 132.001(a)–(c) (authorizing use of unsworn declaration "in lieu of" affidavit required by statute or rule, with certain exceptions not applicable here, so long as declaration is in writing and subscribed "as true under penalty of perjury"). The motion asserted that the agent "saw [the process server] had another 'attorney-in-fact' process to serve," but the agent "told [the process server] that what he was attempting to do was improper, rejected it, and instructed him to tell [the Association] to serve [Obaro] at his proper address." The process server then "abandoned the papers in [the agent's] car, and walked away."

The Association filed a response but did not directly address whether an agent could refuse service. Instead, the Association argued that the return of service reflected proper service, and the motion to vacate was "conclusory, erroneous, and self-serving" and "unsupported by any evidence properly before this Court."

---

[3] The motion stated that it was filed by Ali, Obaro's agent and legal counsel, as a limited appearance to contest service of process and the rendition of the default judgment. The Association objected to the motion to vacate, arguing that Ali was a third party who lacked standing to challenge the default judgment. Although the motion was purportedly filed on behalf of the agent, the motion solely requested that the trial court vacate the default judgment. This relief benefitted only Obaro. The Association did not argue that Obaro lacked standing.

5

The trial court denied the motion to vacate. The order stated that there was "no evidence" before the court that service on Obaro through his agent as shown on the return of service was "deficient." This appeal followed.

## Service of Process

In two issues on appeal, Obaro challenges both the default judgment and the order denying the motion to vacate the judgment on the sole ground of improper service of process.[4] We address these similar issues together.

### A. Standards of Review and Governing Law

We review a default judgment de novo to determine whether it was rendered in strict compliance with the rules governing service of process. *Furst v. Smith*, 176 S.W.3d 864, 868–70 (Tex. App.—Houston [1st Dist.] 2005, no pet.). But we review an order denying a motion to vacate the judgment for an abuse of discretion. *See Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (per curiam); *Interconex, Inc. v. Ugarov*, 224 S.W.3d 523, 536 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (op. on reh'g); *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985) (stating that trial court abuses its discretion if it acts in unreasonable or arbitrary manner or when it acts without reference to guiding rules and principles).

---

[4] The Association did not file an appellate brief.

A trial court must have personal jurisdiction over a defendant to render a binding judgment. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996) (orig. proceeding). Personal jurisdiction requires that the defendant is amenable to the court's jurisdiction and that the defendant was properly served with process. *In re Guardianship of Fairley*, 650 S.W.3d 372, 380 (Tex. 2022). Establishing personal jurisdiction over a party requires citation issued and served in a manner provided for by law. *Id.* (quotation omitted).

A default judgment cannot withstand a direct attack by a defendant who shows that he was not served in strict compliance with the Rules of Civil Procedure. *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990); *see Spanton v. Bellah*, 612 S.W.3d 314, 316 (Tex. 2020) (per curiam) ("Because no-answer default judgments are disfavored, and because trial courts lack jurisdiction over a defendant who was not properly served with process, we have construed 'strict compliance' to mean just that.") (citations omitted). There are no presumptions in favor of valid issuance, service, and return of citation in the face of a direct attack on a default judgment. *Wilson*, 800 S.W.2d at 836 (quotation omitted). A motion to vacate is a direct attack on a default judgment. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012) ("A direct attack—such as an appeal, a motion for new trial, or a bill of review—attempts to correct, amend, modify or vacate a judgment[.]").

**B.     Analysis**

Obaro's two issues are similar. At bottom, he contends that Estates Code section 752.110(5) permits—but does not require—an agent to accept service of process for a principal pursuant to a statutory durable power of attorney. Obaro bases both issues on this contention. In his first issue, he argues that the default judgment was erroneous because the Association did not prove that the agent consented to accept service of process as required by section 752.110(5). In his second issue, he argues that the trial court abused its discretion by denying the motion to vacate the judgment because the motion contained uncontroverted evidence that the agent refused to accept service. We disagree with Obaro's interpretation of the statute.

Obaro relies solely on the language of section 752.110(5). This section is part of the Durable Power of Attorney Act which governs statutory durable powers of attorney. *See* TEX. EST. CODE §§ 751.001, 751.0015, 752.001. The Act authorizes an individual to "use a statutory durable power of attorney to grant an agent powers with respect to an individual's property and financial matters." *Id.* § 752.001(a). The Act enumerates several powers which a principal may grant to an agent, including authority over property transactions, tax matters, personal and family maintenance, and claims and litigation. *See id.* § 752.051. If the principal grants all the powers to the agent, then the principal confers general authority to the agent to act on the principal's behalf for the listed categories. *Id.* § 751.031(a).

8

The powers concerning "claims and litigation" are at issue here. Section 752.110(5) provides that:

> The language conferring general authority with respect to claims and litigation in a statutory durable power of attorney empowers the attorney in fact or agent to:
>
> * * * *
>
> (5)    . . . accept service of process . . . .

*Id.* § 752.110(5).

Obaro does not dispute that in 2011, he signed a statutory durable power of attorney granting "broad and sweeping" powers to his agent, and the agent accepted the authority. The instrument granted Obaro's agent all the powers permitted under the Act, including for "Claims and litigation." The instrument stated that by granting all the permitted powers, it "shall be construed and interpreted as a general power of attorney," and the agent "shall have the power and authority to perform or undertake any action [Obaro] could perform or undertake if [he] were personally present." The instrument contained space for Obaro to "give special instructions limiting or extending the powers granted to [his] agent," but Obaro handwrote "None" in the provided space. Obaro does not dispute that the instrument therefore conferred general authority concerning claims and litigation to the agent. Thus, section 752.110(5) applies, and "[t]he language conferring general authority with respect to claims and litigation" in the instrument "empower[ed]" the agent to "accept service of process[.]" *See id.*

9

Obaro does not dispute that his agent could accept service of process. Instead, he argues that section 752.110 is permissive, not mandatory, and therefore that section permits the agent to refuse to accept service of process.

We review de novo issues of statutory interpretation. *Sirius XM Radio, Inc. v. Hegar*, 643 S.W.3d 402, 406 (Tex. 2022). We consider the plain meaning of the statutory language unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 183 (Tex. 2019) (quotation omitted). If the statute is clear and unambiguous, we must construe the statute according to its common meaning without extrinsic aids. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389 (Tex. 2014) (quotation omitted).

Obaro's argument misconstrues the statute. Section 752.110 governs the principal's actions by permitting the principal to confer authority to accept service of process on the agent. Once the principal has done so, section 752.110 says nothing about whether the agent has discretion to comply or refuse to comply with the authority conferred upon him. Thus, even assuming that the statutory language is permissive and not mandatory as Obaro argues, the distinction applies only to the principal's actions, not the agent's actions. Section 752.110 does not support Obaro's argument that his agent had discretion to accept or refuse service of process.

Obaro does not rely on any other legal authority, such as principles of agency, to support his argument that an agent can refuse to exercise a power granted to him by a principal. Nor does Obaro rely on the language of the power of attorney itself.

When interpreting a power of attorney, courts construe the document as a whole in order to ascertain the parties' intentions and rights. *In re Est. of Miller*, 446 S.W.3d 445, 455 (Tex. App.—Tyler 2014, no pet.). In determining the limits of an agent's authority, we apply two well established rules of construction set out by the supreme court in *Gouldy v. Metcalf*, 12 S.W. 830, 831 (Tex. [Comm'n Op.] 1889). First, the meaning of the general words in the document will be restricted by the context and construed accordingly. *Id.* (quotation omitted). Second, the authority will be strictly construed so as to exclude the exercise of any power that is not warranted either by the actual terms used or as a necessary means of executing the authority with effect. *Id.* (quotation omitted).

Here, the "broad and sweeping" nature of the power of attorney does not indicate the agent could refuse to exercise any of the powers. The instrument specifically states that it is "a general power of attorney" granting the agent "the power and authority to perform or undertake any action [Obaro] could perform or undertake if [he] were personally present," including actions relating to claims and litigation. Under section 752.110(5), Obaro conferred to his agent the power to accept service of process for Obaro. *See* TEX. EST. CODE § 752.110(5). The

instrument is not susceptible of a reading allowing the agent to selectively decide whether to exercise any of the granted powers, particularly considering that when given the opportunity to "give special instructions limiting or extending the powers granted to [his] agent," Obaro handwrote in "None." We therefore conclude that nothing in the record or Obaro's briefing establishes that his agent could refuse to accept service of process on behalf of Obaro.

At the time default judgment was entered, the record showed that Obaro had authorized his agent to accept service of process in a statutory durable power of attorney recorded with the county clerk. In reliance on this instrument, the Association amended its petition to allege that service of process on Obaro could be made by serving his agent pursuant to the recorded power of attorney, a copy of which the Association attached to the petition. *See Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 191 (Tex. 2022) ("[D]ue process requires notice that is reasonably calculated to apprise parties of the pendency of an action."). The citation is addressed to Obaro "through his designated representative agent/attorney in fact Deola Ali," and the return shows that the citation and petition were hand-delivered to the agent at the agent's address. *See* TEX. R. CIV. P. 106(a)(1) (authorizing service of process by "delivering to the defendant, in person, a copy of the citation, showing the delivery date, and of the petition"); *see also* TEX. R. CIV. P. 124 (prohibiting judgment against defendant "unless upon service, or acceptance or waiver of

process, or upon an appearance by the defendant"). When default judgment was rendered, the record showed that Obaro was served in compliance with Rule 106 and the recorded power of attorney. We therefore conclude that the trial court did not err by rendering default judgment.

We similarly conclude that the trial court did not abuse its discretion by denying the motion to vacate the judgment. The motion asserted that the agent knew he was being served with process for Obaro, but the agent rejected the service and instructed the Association to serve Obaro personally. The process server ignored the instruction, placed the documents in the agent's car, and left. These statements were supported by an unsworn declaration by the agent, who is also Obaro's legal counsel. The trial court denied the motion in an order stating that "no evidence" established that service on Obaro through his agent "was deficient."

In challenging the order denying the motion, Obaro solely asserts that his verified motion contained admissible evidence, and therefore the order erroneously stated that there was no evidence of "deficient" service. Obaro thus construes the trial court's order as declining to consider the statements in his motion to vacate even though they were verified. But even considering the statements, Obaro has not established that the agent's refusal of service invalidated the service attempt. *See* TEX. R. APP. P. 44.1(a)(1) (stating standard for reversible error in civil cases). He does not address this point, except to the extent he previously argued that section

13

752.110 gave his agent discretion to refuse service of process. We rejected this argument above. We conclude that Obaro did not establish that his agent could refuse to accept service of process and thereby invalidate the service attempt. Accordingly, we hold that the trial court did not abuse its discretion by denying the motion to vacate.[5]

We overrule Obaro's two issues.

## Conclusion

We affirm the default judgment and the order denying the motion to vacate the judgment.

David Gunn
Justice

Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.

---

[5] Obaro does not argue that he met any of the *Craddock* elements typically required to set aside a default judgment and obtain a new trial. *See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. [Comm'n Op.] 1939).